■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. MICHAEL POWELL, Appellant, v WARDEN OF THE KINGS COUNTY HOSPITAL, Respondent.—In a habeas corpus proceeding, petitioner appeals from a judgment of the Supreme Court, Kings County, entered October 4, 1979, which dismissed the proceeding and remanded petitioner to the custody of respondent. Judgment reversed, on the law, without costs or disbursements, and petitioner is remanded to the custody of the director of Kingsboro Psychiatric Center. Petitioner was charged with several serious felony counts in an indictment arising out of a double murder in Brooklyn in December, 1976. After his arraignment in January, 1977 petitioner attempted suicide in his cell. An examination to determine his competency to stand trial was ordered pursuant to CPL article 730. The examiners reported in February, 1977 that petitioner, though suffering from an "adjustment reaction of adolescence with anxiety", was fit to proceed. A second examination was ordered in April, 1977, with a contrary result, two examiners concluding that petitioner suffered from an "unspecified psychosis" and was unfit to proceed, while a third examiner disagreed, characterizing petitioner as a malingerer whose condition remained unchanged since the first examination. After a hearing, the court found petitioner unfit to proceed, and he was admitted on May 12, 1977 to Mid-Hudson Psychiatric Hospital. On May 18, 1978 an order was entered pursuant to CPL article 730 authorizing retention of the petitioner for an additional one year; a further two-year extension was granted in May, 1979. Subsequent to the entry of the latter order, petitioner moved for a hearing seeking a change of status pursuant to the decision of the United States Supreme Court in *Jackson v Indiana* (406 US 715). On July 12, 1979 the Supreme Court, Orange County, found no substantial likelihood that petitioner would become competent to stand trial in the foreseeable future and directed the hospital director to release petitioner or have him admitted pursuant to article 9 of the Mental Hygiene Law "in the same manner that any other civil patient" would be admitted. On July 23, 1979 petitioner was admitted as an involuntary patient on a two-physician certificate under article 9 of the Mental Hygiene Law (§ 9.27). He was transferred on September 6, 1979 to Kingsboro Psychiatric Center in Kings County, which is a less restrictive institution. On September 20, 1979 (fewer than 60 days after his admission as an involuntary patient to a mental hygiene facility) petitioner left the Kingsboro facility without permission in

order to visit his mother, and returned voluntarily that same day. The next day, a warrant for his arrest was issued by the Supreme Court, Kings County. He was arrested on September 25, 1979 at the facility and charged with criminal escape under section 205.15 of the Penal Law. That section makes it a class D felony to escape from a "detention facility" after having been charged with a felony. Petitioner was remanded after arraignment that same day to respondent for a CPL article 730 examination with respect to his fitness to stand trial on the escape charge. Prior to the CPL article 730 examination, petitioner commenced a habeas corpus proceeding. By judgment entered October 4, 1979 the proceeding was dismissed by the Supreme Court, Kings County, and this appeal ensued. On this appeal petitioner raises the question of whether his admitted escape constituted criminal escape as that term is used in section 205.15 of the Penal Law, which speaks of escape from a "detention facility". In subdivision 1 of section 205.00 "detention facility" is defined, in relevant part, as "any place used for the confinement, pursuant to an order of a court, of a person * * * (d) * * * confined pursuant to an order of a court." Petitioner argues that his escape was not criminal under this definition. We agree. The term "escape" is not defined in the applicable statutes, so we assume its common meaning is denoted. The term "confinement" is likewise not statutorily defined, although the regulations of the Department of Mental Hygiene state that *"Confine* shall mean to restrict or control in any way the freedom of movement of an individual, either by retaining such person in a facility, or by suitable restraints exercised at any other times or places" (14 NYCRR 1000.1 *[1]).* The issues, then, are (1) whether petitioner was confined, and, if so, (2) whether such confinement was "pursuant to an order of a court." As to petitioner's confinement, we ascertain from the limited record only that petitioner was assigned to Kingsboro Psychiatric Center with an "out-patient" status at the time of his escape; and for the purposes of this appeal, we assume that his failure to contest the factual issue of escape permits us to infer the necessary confinement. As to whether such confinement was "pursuant to" a court order, however, it is our opinion that the order (of July 12, 1979) preceding petitioner's admission to Mid-Hudson Psychiatric Hospital as a "civil" patient under article 9 of the Mental Hygiene Law was not an order of confinement under subdivision 1 of section 205.00 of the Penal Law. The order of July 12, 1979 merely terminated the People's personal jurisdiction over petitioner, which had been obtained by his arrest and arraignment upon the murder indictment. The order did not empower the director of the Mid-Hudson Psychiatric Hospital or any other official of the Department of Mental Hygiene to confine petitioner; instead, under the equal protection mandate of *Jackson v Indiana* (406 US 715, *supra)* it could only direct the facility director to exercise his administrative discretion under article 9 of the Mental Hygiene Law by either releasing petitioner or admitting him on the same basis provided for any other person, without regard to his status as an accused. Under the generally applicable statute for commitments of the mentally ill or retarded, the initial confinement is not pursuant to a court order. Under article 9, the role of the judiciary is restricted, for the most part, to a review of the discretion exercised by the autonomous departmental offices of mental health and mental retardation and developmental disabilities; the powers of the commissioners of those two offices are virtually identical with respect to the admission, care, treatment and release of patients. Admission to a hospital may be made by the director of a hospital under section 9.27 of the Mental Hygiene Law, who may initially "receive and retain therein as a patient any person alleged to

be mentally ill and in need of involuntary care and treatment" on his own authority. "[I]n need of involuntary care and treatment" means, under section 9.01, that the "person has a mental illness for which care and treatment * * * in a hospital is essential to [his] welfare and whose judgment is so impaired that he is unable to understand the need for such". This authority to admit a patient involuntarily can be exercised by the director, as it was in this matter, upon the certificates of two examining physicians, accompanied by an application executed by a person specified in subdivision (b) of section 9.27 of the Mental Hygiene Law, such as the director himself. Other statutory provisions for involuntary admission similarly provide for commitment without judicial involvement (see Mental Hygiene Law, § 9.37, which authorizes admission on the certificate of a director of community services, and §§ 9.39, 9.45, which authorize emergency admissions). The transfer, discharge or conditional release of patients is at the sole discretion of the appropriate mental hygiene official, without court intervention (see Mental Hygiene Law, §§ 29.11, 29.15). Provisions for judicial involvement for section 9.27 admissions are spelled out in section 9.31 of the Mental Hygiene Law. They provide for notice, hearing, review and judicial approval (see Mental Hygiene Law, § 9.31, subd [c]). They apply to patients involuntarily admitted only on medical certification and are triggered by a request by a friend, relative or the Mental Health Information Service, established by section 29.09, to the director for a Supreme Court or County Court hearing. Such request must be made prior to the expiration of 60 days from the date of admission. Furthermore, under section 9.33 of the Mental Hygiene Law, if, as here, no such request is made, the director need not apply for an order of retention from the court until the end of such 60-day period (if a § 9.31 request had been made and been denied, the director would have had to apply for such a retention order within 30 days of the denial). In the instant case an application under section 9.33 was made, but the escape for which petitioner was charged occurred prior to the expiration of the 60-day period and prior to the entry of any court order of retention; hence, there was no court order authorizing confinement of petitioner at the time of petitioner's escape. We conclude, then, that petitioner's escape was not criminal because his confinement was not "pursuant to" a court order as that phrase is used in subdivision 1 of section 205.00 of the Penal Law, but was instead pursuant to the discretionary action of the hospital director as authorized by section 9.27 of the Mental Hygiene Law. We note in passing that the termination of Criminal Term's in personam jurisdiction over petitioner with respect to the murder indictment does not affect the continuing validity, if any, of that accusatory instrument (see *People ex rel. Anonymous v Waugh,* 76 Misc 2d 879; *People v Anonymous,* 76 Misc 2d 884). Damiani, J. P., Mangano, Rabin and Gulotta, JJ., concur.