THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BYRON P. WALTER, Appellant.

Fourth Department, February 21, 1986

APPEARANCES OF COUNSEL

*Gerald T. Barth* for appellant.

*Richard A. Hennessy, Jr.,* District Attorney *(Beth J. Van Doren* and *John A. Cirando* of counsel), for respondent.

## OPINION OF THE COURT

PINE, J.

Defendant appeals his conviction of escape in the second degree pursuant to Penal Law § 205.10 (1) on the sole ground that no crime was committed because the Forensic Unit of the Hutchings Psychiatric Center in Syracuse is not a detention facility within the meaning of Penal Law § 205.00 (1). We affirm.

Defendant had been committed to the Forensic Unit at Hutchings in 1980, pursuant to CPL 330.20, following a CPL 220.15 plea that he was not responsible by reason of mental disease or defect for manslaughter in the first degree and other crimes with which he had been charged. A first retention order, in effect at the time of defendant's unauthorized departure from Hutchings, had been granted after a hearing upon the court's finding that he was then suffering from a dangerous mental disorder as defined in CPL 330.20 (1) (c). That order provided that "the Commissioner of Mental [Hygiene] is authorized to continue custody of the above-named defendant for care and treatment for a period not to exceed one year from the expiration of the period prescribed in the aforesaid commitment order * * * under which the above-named defendant is being currently confined in the aforesaid secure facility of the State Office of Mental Health."

Penal Law § 205.10 (1) provides that a person is guilty of escape in the second degree when he escapes from a detention facility. A detention facility is defined in Penal Law § 205.00 (1) as any place used for the confinement, pursuant to an order of a court, of a person (a) charged with or convicted of an offense, or (b) charged with being or adjudicated a youthful offender, person in need of supervision or juvenile delinquent, or (c) held for extradition or as a material witness or (d) otherwise confined pursuant to an order of a court. This is a broad definition which by its terms covers any place where a

person is confined pursuant to a court order, although psychiatric confinement is not specifically mentioned.

The parties disagree about the intended meaning of Penal Law § 205.00 (1) (d). Defendant relies heavily on *People v Ortega* (127 Misc 2d 717), in which the evolution of Penal Law § 205.00 (1) (d) is explored. The court in the *Ortega* case found that it is reasonable to conclude from the "conspicuous absence" of any reference to mental health facilities and intent to exclude escapes from mental health facilities, and that if by some "strained interpretation" psychiatric facilities were intended to come within the term "detention facility" then nonsecure facilities should not be included *(People v Ortega, supra,* pp 725-729). The *Ortega* court placed considerable emphasis on the fact that Ortega was in a nonsecure facility. Defendant here was confined in a secure facility, which is defined as a psychiatric center or unit of a psychiatric center operated by the Office of Mental Health staffed with personnel adequately trained in security methods and so equipped as to minimize the risk or danger of escapes. There are four secure facilities in the State: Mid-Hudson Psychiatric Center, Gowanda Regional Forensic Unit, Manhattan Forensic Unit and Hutchings Regional Forensic Unit, from which defendant escaped (14 NYCRR 541.1 [z]).

We are not required to decide whether a nonsecure facility constitutes a detention facility, but there is nothing in the statutory language or legislative history which leads us to exclude a secure psychiatric facility from the definition of detention facility.

Defendant argues that an inclusive interpretation is inappropriate because CPL 330.20, which is a detailed and comprehensive statute covering the procedure to be followed after a verdict or plea of not responsible by reason of mental disease or defect, includes provisions relating to escape. CPL 330.20 (19) is captioned "Escape from custody; notice requirements". The section provides for immediate notice of an escape from custody to the District Attorney, the Superintendent of State Police, the Sheriff of the county where the escape occurred, the police department having jurisdiction of the area where the escape occurred, any person believed to be in danger, and any law enforcement agency and person the facility staff believes would be able to apprise an endangered person of defendant's escape. The section details who must give the notice and how, and concludes: "The defendant may be apprehended, restrained, transported to, and returned to the facility

from which he escaped by any peace officer, and it shall be the duty of the officer to assist any representative of the commissioner to take the defendant into custody upon the request of such representative." The final sentence closely parallels Mental Hygiene Law § 29.19 which allows apprehension of a person committed or admitted to department facilities who has escaped from the facility or lawful custody.

Defendant argues that these provisions are exclusive and evidence a policy not to treat escape as a crime, relying on *People v Valenza* (60 NY2d 363). The *Valenza* case involved civil and criminal penalties for sales tax violations and was decided on the basis that the Legislature had intended to make a specific noncriminal statute the exclusive means of punishing the conduct with which defendant was charged. The court held that the Legislature's structuring of Tax Law § 1145 to provide substantial civil penalties for failing to pay sales tax and to exclude this conduct from the criminal penalties section *(see,* Tax Law § 1145 [b]) must be deemed to manifest an intent to exclude such conduct from criminal prosecution under either the Tax Law or the Penal Law *(People v Valenza, supra,* p 372).

It cannot be said that CPL 330.20 (19) is comparable. The focus of this section is on public safety, not on whether defendant should be punished. It is designed to alert immediately law enforcement personnel and anyone who might be in danger that a person committed pursuant to CPL 330.20 has escaped. The language with respect to apprehension and restraint is permissive rather than mandatory. The Legislature has not provided the comprehensive scheme present in *People v Valenza (supra)* which would preclude the application of the Penal Law escape provisions.

Our earlier holding in *People v Buthy* (85 AD2d 890, *lv denied* 55 NY2d 1040) supports this conclusion, although the former version of CPL 330.20 in effect when that case was decided did not include the present subdivision covering escape. The revised version was the result of the Law Revision Commission's recommendation, after reviewing the insanity defense, that the insanity defense should be retained, but postverdict procedures should be changed substantially, to ensure the protection of the public, while at the same time safeguarding the rights of the offender (1980 NY Legis Ann, at 219).

In *People v Buthy (supra),* defendant pleaded guilty to

escape in the third degree in satisfaction of a charge of escape in the second degree. Defendant there had been committed to the custody of the Commissioner of Mental Hygiene, under CPL 330.20, and had absconded from Gowanda Psychiatric Center. We held that County Court properly denied defendant's motion to dismiss the indictment based on insufficiency of the evidence before the Grand Jury, since CPL 210.20 (1) (b) permits dismissal only where the evidence is not sufficient to establish the offense charged or any lesser included offense. We found that the evidence established escape in the third degree (Penal Law § 205.05), a lesser included offense, since defendant escaped from the custody of the Commissioner of Mental Hygiene, and we declined to reach the issue of whether defendant's acts could constitute escape in the second degree (Penal Law § 205.10), as the issue was moot, based on defendant's plea of guilty to escape in the third degree.

We also find support for our conclusion in *People ex rel. Powell v Warden* (73 AD2d 654). That case involved an admitted escape from Kingsboro Psychiatric Center of a person originally hospitalized at Mid-Hudson Psychiatric Hospital pursuant to CPL article 730 as unfit to stand trial. After two retentions, Powell had moved for a change of status pursuant to *Jackson v Indiana* (406 US 715). The court after a hearing found no substantial likelihood that he would become competent to stand trial in the foreseeable future and directed the hospital director to either release him or have him admitted as a civil patient pursuant to Mental Hygiene Law article 9. He was then admitted on a two physician certificate (Mental Hygiene Law § 9.27) and transferred to Kingsboro, which is less restrictive. He was charged with escape in the first degree, for escaping from a detention facility when charged with a felony because he left the hospital without permission, to visit his mother, although he returned voluntarily the same day.

In the *Powell* case *(supra),* the Second Department in construing detention facility concluded that although Powell was confined, his confinement was not, at the time he escaped, pursuant to an order of a court. The court reasoned that the order following the *Jackson* hearing was not an order of confinement because it directed the hospital director to exercise his administrative discretion under Mental Hygiene Law article 9 by either releasing or admitting Powell without regard to his status as an accused. The initial involuntary confinement of the mentally ill is within the administrative

authority of the director, and within 60 days of the involuntary admission the director could apply for a court order of retention (Mental Hygiene Law § 9.33). The escape occurred after application for a court order of retention but before the expiration of 60 days from the involuntary admission and before any court order of retention had been entered. On those facts, the Appellate Division ruled that Powell was held pursuant to the discretionary action of the hospital director and not by virtue of any court order when he escaped, so that his escape was not criminal.

For all the above reasons, the judgment of conviction should be affirmed.

DILLON, P. J., DOERR, GREEN and O'DONNELL, JJ., concur.

Judgment unanimously affirmed.