[823 NYS2d 1]

The People of the State of New York, Respondent, v Keith Antwine, Appellant.

First Department, August 31, 2006

## APPEARANCES OF COUNSEL

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Jonathan Marvinny* and *Sara Gurwitch* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Frances Y. Wang* and *Nancy Killian* of counsel), for respondent.

## OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to review whether defendant's conviction of escape in the second degree was supported by legally sufficient evidence, and whether the trial court properly responded to numerous notes submitted by the jury during deliberations seeking clarification of the distinction between escape and attempted escape.

Defendant Keith Antwine, by Bronx County indictment number 2265/03, filed on May 27, 2003, was charged with robbery in the second and third degrees, grand larceny in the fourth degree, criminal possession of stolen property in the fourth degree, unauthorized use of a vehicle in the third degree, two counts of endangering the welfare of a child, and escape in the second degree. Defendant subsequently filed an omnibus motion and on July 28, 2004, a *Huntley/Wade/Dunaway* hearing was held, after which the hearing court denied defendant's motion in all respects. Defendant does not challenge that ruling on appeal.

Testimony educed at trial reveals that on April 22, 2003, Melissa Feliciano was driving a Chevrolet Blazer, which she had borrowed from a friend, and was accompanied by her sister-in-law, Mai Ling Cardenas, and Ms. Feliciano's two young children, who were three and nine years old at the time of the incident. Ms. Feliciano pulled the vehicle over in the vicinity of Crotona Avenue and 187th Street, Bronx County, and left it idling in

front of a store in order to use a pay phone located in front of the establishment. Ms. Cardenas, who was pregnant at the time, also got out of the vehicle, before Ms. Feliciano returned, in order to use the restroom located in the store. Defendant, at this juncture, jumped into the driver's seat of the vehicle and drove away with Ms. Feliciano's two children in the backseat. Defendant ultimately abandoned the vehicle at 189th Street and Beaumont Avenue and was arrested nearby a short time later.

While defendant's arrest was being processed at the 48th Precinct, he began to complain about a toothache and a hernia, and was escorted to St. Barnabas Hospital by Police Officer Janine Bohan-McDowell shortly thereafter. Once defendant was assigned to a bed in the emergency room, which was approximately 5 to 10 feet from the main desk, Officer Bohan handcuffed his right wrist to the bars of the bed. Defendant, some time later, began complaining that the handcuffs were too tight, and Officer Bohan testified that she observed "they were very tight on his hand" and that "[h]is hand looked like it was turning colors." As a result, Officer Bohan inserted the key unlocking the handcuffs, after which defendant "lifted up on the cuff and ran away" from Officer Bohan.

Defendant proceeded to run approximately 25 to 30 feet down the hallway with Officer Bohan in pursuit. The officer testified that she caught up to defendant at one point, but he "squirmed" away from her. Defendant eventually reached the end of the hallway, turned right, and ran approximately 12 feet toward two sets of doors that exited the hospital. Officer Bohan described the first set of doors as the "inside doors" and the second set as the "outside doors." Officer Bohan tackled defendant between the two sets of doors and "basically laid on top of him until [she] got more help." Two doctors and another officer arrived and assisted Officer Bohan in subduing and handcuffing defendant.

The trial court, during the jury charge, explained the difference between escape in the second degree and attempted escape in the second degree:

"I will explain the differences between the two. Under our law, a person is guilty of escape in the second degree when having been arrested for a Class C felony he escapes from custody.

"Custody means restraint by a public servant pursuant to an authorized arrest or an order of the

court. A public servant means a police officer, a public officer or employee of the state.

"An arrest is authorized when the police officer making the arrest has reasonable cause to believe that the person being arrested has committed a crime . . . .

"Escape means to get away, break away, get free or get clear when the conscious purpose is to evade custody . . . .

"Under our law, a person is guilty of attempt to commit a crime when with the intent to commit a crime, he engages in conduct which tends to effect the commission of that crime.

"Conduct which tends to effect the commission of a crime means conduct which comes dangerously close or very near to the completion of the intended crime. If a person intends to commit a crime and engages in conduct which carries his purpose forward within dangerous proximity to the completion of the intended crime, he is guilty of an attempt to commit that crime.

"It does not matter that the intended crime was not actually completed. The person's conduct must be directed towards the accomplishment of the intended crime. It must go beyond planning and mere preparation but it need not be the last act necessary to effect the actual commission of the intended crime.

"Rather, the conduct involved must go far enough that it comes dangerously close or very near to the completion of the intended crime."

The trial court advised the jury that if it found defendant guilty of second-degree escape, it should terminate its deliberations and, if it found defendant not guilty of that charge, it should consider the count of attempted escape in the second degree. The jury, during deliberations, submitted a note in which it inquired "[w]hat are the elements for escape and attempted escape?" The trial court restated the definitions and elements of the two crimes, and emphasized that: "[o]nce again, it comes down to the factual determination on your part. How the facts in this case apply to the law I've set forth for you."

The jury subsequently submitted another note to the court, asking "[w]hat does it mean to be free and clear in escape vs. attempted escape." The court responded that "escape" means "to get away, break away, get free or get clear with the conscious purpose to evade custody." The jury then indicated it wanted the court to review the matter again, so the court explained:

> "[Free and clear is] not a word that has legal beyond the everyday meaning . . . You've got to look at the facts and you've got to decide whether the People have proven beyond a reasonable doubt that the defendant got free and clear. And if not, then you must vote not guilty. But if you think the People have proven beyond a reasonable doubt that he got free and clear, just for any amount of time, then you must vote guilty. But if you vote not guilty, if you decide he's not guilty of the escape, then you've got to decide whether . . . he had a conscious intention to escape, took steps to escape but didn't in this case get free and clear.

> "I think that's the only way you're going to resolve this dilemma. You're just going to have to talk among yourselves and decide what the facts show or don't show beyond a reasonable doubt."

The jury next inquired whether the word "clear" in the definition of escape meant "out of sight" or "out of physical contact"; if the word "complete" in the definition of attempted escape meant "break away [from] physical contact"; and if there was a "time frame" for escape. The court, prior to responding to the jury, advised the attorneys that it intended to inform the jury that "clear" in this context meant only that a person had to be "out of physical contact" to have escaped. Defense counsel objected, and stated that "if you define this, you will in the end define the verdict." Defense counsel further opined that "free and clear" for the purposes of the crime of escape was not determined only by whether the person had been out of physical contact with the police officer who had him in custody, but rather "the escape is the accomplished goal and attempt is the unaccomplished goal."

The court replied that it had to define escape at this point, and stated its position that "once you're free of restraints or free from physical contact, I think that constitutes . . . an escape under the statute." Defense counsel took exception, and

asked whether escape could mean that a person had to be more than out of physical contact, to which the court responded, "That's not what the statute says. The statute says to get away, break away, get free and clear." Defense counsel then inquired, "[S]o to be one step ahead of the officer would therefore be the completed escape," to which the court answered, " [T]hat looks like what it says here," at which time defense counsel stated, "[I] would object."

The court, when the jury reentered the courtroom, explained that the legal definition of "escape" is:

> "[t]o get away, break away, get free or clear with the conscious purpose to evade custody. So in that context, you ask if the definition, the term clear means out of sight or out of physical contact. It means out of physical contact, not necessarily out of sight.

> "In the word complete in the definition of attempted escape, does that mean break away from physical contact? Right, the breaking away would constitute a completed escape. . .

> "Is there a time frame for escape? No. It could be— well, there is a time frame but it could be very, could be for a few, for a very restricted period of time, for a second, two seconds. Yes, that could constitute an escape."

The jury, approximately two hours later, submitted another note to the court, inquiring:

> "Escape: Did you say break away meant completely escape. We are unsure as to the attempt versus escape. Attempt: Is that breaking physical contact or is escape also breaking physical contact? Does one mean out of sight or do both mean the same? What is the difference? In terms of 'completely escape,' does it solely mean to break away or break physical contact? Or does 'completely escape' mean the defendant broke away and did not get caught? Does an escape exist even if the defendant is caught?"

Defense counsel, during a subsequent discussion with the court and the prosecutor, reiterated his fear that the court would be "absolutely directing a verdict" if it instructed the jury that a completed escape meant being out of the control of an officer

for even a split second. The court responded that it would not be directing a verdict because it would not be telling the jury that it should believe Officer Bohan's version of the events. Defense counsel then suggested that it provide the definition of "escape" set forth in Webster's Dictionary, or advise the jury how far defendant had gone or for what period of time he had to be gone, but the court responded that according to the law, as expounded in *People v Hutchinson* (56 NY2d 868 [1982]), and reflected in the Criminal Jury Instructions, even if an individual "would run out into the hall [and] get tackled, that's an escape."

Upon the jury's return to the courtroom, the court first pointed out that it was up to it to determine what, if any, of Officer Bohan's testimony it believed beyond a reasonable doubt, stating "[y]ou could believe all of it. You could believe some of it. You could believe none of it. That might go forward in answering your question." The court, with regard to the questions delineated in the jury's note, then explained that "break away meant break away. It's got nothing to do with completely escaping. It means what it says. Common definition of what it means to break away." The court also noted that one could escape without being "out of sight," and that the jury need only decide whether "physical contact was broken" and whether defendant had the conscious purpose to evade custody. The court continued:

> "[A]ttempt means to have an intention in your mind, to take steps toward achieving that intention but to fall short.

> "In this case, to fall short means to fall short of getting away, breaking away, getting free or getting clear with the conscious purpose to evade custody. So it's got to fall short of that . . .

> "The completed crime under the definition would involve getting away, breaking away, getting free and clear. Doesn't mean getting out of sight. It's just what it says, nothing more.

> "If you think in this instance it would require him getting out of sight, that's up to you. But the law does not require that as a basis for a finding of escape."

The jury reached a verdict approximately 30 minutes later, acquitting defendant of the robbery counts, but convicting him

of grand larceny in the fourth degree, escape in the second degree, and two counts of endangering the welfare of a child. Defendant limits his arguments on appeal to challenging his conviction for escape in the second degree.

■ Initially, defendant maintains that his conviction for escape in the second degree was supported by legally insufficient evidence. To the extent that defendant asserts that his conviction on this count is in violation of his right to due process, such constitutional claim has not been preserved for our review, as it was never raised before the trial court (*see People v Iannelli*, 69 NY2d 684, 685 [1986], *cert denied* 482 US 914 [1987]; *People v Lisojo*, 27 AD3d 215 [2006]), and we decline to review it in the interest of justice. In any event, the argument is unavailing.

The standard for appellate review of legal sufficiency issues is "whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People" (*People v Williams*, 84 NY2d 925, 926 [1994]; *see also People v Hines*, 97 NY2d 56, 62 [2001]; *People v Covington*, 18 AD3d 65, 68 [2005], *lv denied* 5 NY3d 787 [2005]; *Jackson v Virginia*, 443 US 307, 319 [1979]; CPL 70.10 [1] [which defines legally sufficient evidence as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof; except that such evidence is not legally sufficient when corroboration required by law is absent"]).

In order to establish defendant's guilt of escape in the second degree, the People were required to prove that defendant, "[h]aving been arrested for, charged with or convicted of a class C, class D or class E felony . . . escape[d] from custody" (Penal Law § 205.10 [2]). Custody is defined in relevant part as "restraint by a public servant pursuant to an authorized arrest" (Penal Law § 205.00 [2]). Defendant herein concedes that he was in police custody after being arrested for robbery in the second degree, a class C felony; indeed, his entire argument pivots on the definition of escape.

In *People v Hutchinson* (56 NY2d at 870), the Court of Appeals, in addressing this very issue, opined that the "commonly understood definition of the verb 'escape' is 'to get away (as by flight or conscious effort): break away, get free or get clear (the prisoner *escaped* from prison)' " (quoting Webster's Third New International Dictionary 774; *see also People ex rel. Powell v*

*Warden of Kings County Hosp.*, 73 AD2d 654, 655 [1979] ["(t)he term 'escape' is not defined in the applicable statutes, so we assume its common meaning is denoted"]; CJI2d [NY] Penal Law § 205.10 [2]).

In this matter, viewing the evidence in the light most favorable to the People, we conclude that the jury could rationally have concluded, given Officer Bohan's uncontradicted testimony, that defendant broke away from the officer, not once but twice, and got free in the hospital hallway, albeit for a short period of time and, thus, was guilty of escape in the second degree (*see People v Pilgrim*, 287 AD2d 315, 316 [2001], *lv denied* 97 NY2d 707 [2002] [in which this Court held that defendant's conviction of escape should be upheld based on the fact "that defendant was out of the control of the officers for a short period of time"]; *People v Allen*, 286 AD2d 633, 633-634 [2001], *lv denied* 97 NY2d 726 [2002] [where this Court held that the evidence was legally sufficient to establish the crime of escape in the second degree because "(a)t the time of his arrest, defendant was able to get beyond the control of the arresting officers and flee to a location a block and a half away"]; *People v Sargent*, 194 AD2d 865 [1993] [in which the Third Department upheld defendant's conviction for escape in the second degree where defendant unlocked the police car's door, left the vehicle, ran up the street, over a guardrail, down an embankment, and back to the store where he was apprehended]; *People v Mesa*, 188 AD2d 688, 689 [1992], *lv denied* 81 NY2d 844 [1993] [where the Third Department found legally sufficient evidence of escape in the second degree where defendant slipped through the window of a bathroom in a holding cell, and was apprehended 5 to 10 minutes later, finding that "(t)he fact that defendant did not escape any great distance before he was recaptured does not alter the fact that he actually escaped from the custody of his guards"]).

We decline to adopt defendant's position that because he did not get out of the hospital, failing, in the officer's testimony, by only a few feet, and was not recaptured in a different location, there was legally insufficient evidence to support a conviction of escape in the second degree. The law, as we view it, does not impose a crossing-the-threshold standard upon the prosecution and, to the extent that the Fourth Department's decision in *People v Neely* (248 AD2d 996 [1998] [legally insufficient evidence of escape in the second degree where defendant fled the courtroom, but was apprehended on the same floor of the

courthouse by court officers]) is to the contrary, we decline to follow it (*see People v Allen*, 286 AD2d at 634).

Lastly, defendant's argument that the court, in response to numerous jury notes seeking clarification of the difference between a completed escape and an attempted escape, misstated the law and directed an improper verdict, thereby violating his right to due process, is likewise unpreserved for our review (*People v Iannelli*, 69 NY2d at 685; *People v Lisojo*, 27 AD3d at 215), and we decline to review it in the interest of justice. In any event, for the reasons stated above, the court patiently and accurately defined escape and attempted escape to the jury and defendant's argument that the court should have charged the jury that "to be guilty of escape in the second degree, a defendant need not only break physical contact with the officer guarding him, but must manage to leave the location where he is being held," must be rejected as the law imposes no temporal or spatial limitations on the definition of escape. Moreover, the court, contrary to defendant's protestations, did not direct a verdict as it specifically instructed the jury that it could either credit Officer Bohan's testimony in full or in part, or reject it outright. Accordingly, we reject defendant's challenges to the court's instructions, including his unpreserved constitutional claims.

Accordingly, the judgment of the Supreme Court, Bronx County (John A. Barone, J.), rendered November 16, 2004, convicting defendant, after a jury trial, of grand larceny in the fourth degree, escape in the second degree, and two counts of endangering the welfare of a child, and sentencing him, as a second felony offender, to 2 to 4 years each on the grand larceny and escape convictions, and one year each on the endangering the welfare of a child convictions, all to run concurrently, should be affirmed.

Saxe, J.P., Williams, Catterson and Malone, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered November 16, 2004, affirmed.