RANDALL L. CROMER ET AL, APPELLANTS, V. FARMLAND SERVICE COOP, INC., APPELLEE.

252 N. W. 2d 635

Filed April 20, 1977. No. 40934.

Murphy, Pederson & Piccolo and LeRoy Anderson, for appellants.

Maupin, Dent, Kay, Satterfield, Girard & Scritsmier and Dale A. Romatzke, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

PER CURIAM.

The plaintiffs' mobile home was destroyed by fire on November 11, 1972. The furnace in the home had been converted from natural gas to propane by employees of the defendant on October 21, 1972. This action was brought to recover the damages caused by the fire. The jury returned a verdict for the defendant and the plaintiffs have appealed. The plaintiffs contend the judgment is not supported by the evidence; the trial court erred in refusing to allow the plaintiffs to introduce rebuttal evidence; and the trial court erred in failing to grant a new trial on the

basis of statements made by several of the jurors after the verdict had been received.

The record shows the plaintiffs' mobile home was equipped with a Payne gas furnace that was designed to burn natural gas as a fuel. In October 1972, the plaintiffs moved their mobile home from Grand Island, Nebraska, to the Lake Jeffrey area in Lincoln County, Nebraska. Natural gas was not available at Lake Jeffrey so the plaintiffs asked the defendant to convert their furnace so that it could be fired with propane.

The work was performed by Keith Fickenscher, an employee of the defendant. Fickenscher testified that he installed a regulator on the bank, laid approximately 100 feet of copper tubing in a trench from the tank to the home, and then installed a second regulator at the point where the line connected to the existing gas line in the home.

In converting the furnace from natural gas to propane he installed a new pilot assembly designed to burn propane and resized the orifices in the manifold. He also installed a blank in the internal regulator on the gas valve so that it would permit the furnace to operate on propane.

The allegations of negligence relate primarily to the resizing of the orifices. The orifices are small brass fittings in the manifold that control the amount of gas which is supplied to the burners in the furnace. Since propane has a higher BTU content than natural gas and is delivered at a higher pressure it is necessary to reduce the size of each orifice in order to maintain the same BTU rating of the furnace after the conversion. Fickenscher resized the orifices by filling them with solder and then redrilling each orifice with a smaller sized drill.

On October 29, 1972, the furnace malfunctioned. There was some smoke, the heat went off, and the furnace would not operate. Mr. Cromer took off the back of the furnace and saw that some of the control

wires had been burned and a plastic control knob had burned or melted. Mr. Cromer called the defendant and Irvin Williams, an employee of the defendant, came out to repair the furnace.

Williams repaired the wiring and then discovered that the solder was missing from one of the orifices and it was allowing too much propane to reach the burner. He resized that orifice by pounding or "peening" it shut and then redrilling it. He relighted the furnace and recycled the thermostat several times to make sure that it was operating properly before he left.

On November 11, 1972, the home caught on fire. The plaintiffs were in Wyoming when the fire broke out. Jerry Kort, a neighbor whose mobile home was about 100 feet away, was awakened by a loud noise. He looked out the window and could see smoke coming from the furnace room door of the plaintiff's home. He reported the fire and then went to the plaintiffs' home. He opened the furnace room door and saw that smoke and flames were coming out of the furnace "right at the bottom." He then shut off the propane supply. It took from 30 to 45 minutes to bring the fire under control and there was severe damage to the home and its contents.

The plaintiffs, in their case-in-chief, called two witnesses who testified concerning the cause of the fire. Kort testified concerning what he saw and heard at the time of the fire. Leonard Simon, the distributor of Payne furnaces for this area, testified as an expert witness.

Simon testified that the proper method of conversion would have been to install new orifices and burners, and the pilot light should have been relocated. He further testified there was no known way in which an orifice can be filled with lead or "peened" shut and then redrilled accurately in the field. He examined the orifices removed from the plaintiffs' furnace and found they were too large and

would admit an excessive amount of propane. He testified that it was his opinion the fire was caused by too much propane entering the furnace, due to the fact the burners had not been changed and the orifices were oversized. The excessive amount of propane resulted in a flashback or small explosion which blew the burner out of alignment and the door out of the compartment. The result was an uncontrolled fire. The safety devices did not operate because the insulation on the wiring burned off.

The defendant produced the testimony of Fickenscher and Williams, the employees of the defendant, who had made the original conversion and had repaired the furnace on October 29, 1972, after it had malfunctioned. The defendant also called three expert witnesses, Roy Hill, who had been in the propane business in North Platte, Nebraska, since 1946; Robert Gerrard, the gas superintendent of Northwestern Public Service Company at North Platte; and Burdette Lundberg, who has been in the propane business in Kearney, Nebraska, since 1951.

The defendant's evidence tended to prove that the method used by the defendant's employees to convert the plaintiffs' furnace was proper; that the orifices were properly resized; and there was no reason why the same burners could not be used for both natural gas and propane. There was also evidence that if the furnace is over-fired, soot collects on the heat exchanger and other parts of the furnace. The absence of heavy soot deposits and the absence of damage to the plastic knobs and other components near the manifold, including the wiring and wiring diagram on the front panel, indicated there had been no over-firing or "roll-out."

The defendant's evidence tended to disprove the allegations of negligence made by the plaintiffs and created a question for the jury. The plaintiffs' contention that the verdict for the defendant is not supported by the evidence is without merit.

On rebuttal the plaintiffs offered the testimony of an additional expert witness, Herbert R. Pearson. Pearson had retired in 1974 after having been in the propane business in North Platte, Nebraska, since 1942. Roy Hill, who had testified for the defendant, had been employed by Pearson for 9 years.

Pearson testified that the proper way to convert a furnace from natural gas to propane was to follow the manufacturer's specifications; and that it is improper to resize an orifice by soldering or peening it shut and then redrilling it. Objections to further testimony by this witness on the ground that it was not proper rebuttal were sustained. The plaintiffs then made the following offer of proof: "MR. PEDERSON: The plaintiff would move to prove by this witness on rebuttal that it is significant to him, in his opinion, that this fire was caused — started in the lower portion of this furnace for the reason that he has been made aware of the fact that a witness immediately in the area, Mr. Kort, heard an explosion. He went over to the furnace door, opened it and saw flames coming out beneath. This is offered in rebuttal for the reason that the testimony of a witness has previously been offered to say that the fire couldn't have started from a lower portion; no soot, not a furnace started fire. MR. KAY: I will object to the offer and the question for the following reasons: 1) There is no proper foundation for this man to give any opinion to start with. THE COURT: This is true. MR. KAY: That is 1. And 2) — There is absolutely no evidence on the part of the defense as to where this fire started or the cause of the fire. THE COURT: I want to ask a question. Didn't you use your witness to testify where it did start; how can you come back. . . . . MR. PEDERSON: But it is significant to him it started down in the lower portion. THE COURT: Overruled."

As we understand the record, the defendant's objection to the offer of proof was sustained. The rul-

ing on the objection was announced as "overruled" but the parties seem to have understood this to mean the offer to prove was overruled.

In their case-in-chief the plaintiffs had produced evidence which tended to prove the fire was caused by an over-firing or "roll-out" in the furnace. The defendants' evidence tended to disprove this theory and suggested that the condition of the furnace after the fire indicated there had been no over-firing or "roll-out." This evidence tended to support an inference that the fire started somewhere other than near the bottom of the furnace. The question here is whether the plaintiffs were entitled to produce additional evidence in rebuttal to show there had been an over-firing or "roll-out."

The general rule is that rebuttal evidence should be confined to that which explains, disproves, or counteracts evidence introduced by the adverse party. McClellan v. Hein, 56 Neb. 600, 77 N. W. 120. It is within the discretion of the trial court to allow the introduction of evidence in rebuttal which would have been proper evidence upon the case-in-chief or should have been introduced at that time. Sacco v. Gau, 188 Neb. 808, 199 N. W. 2d 605. The issue is whether the trial court abused its discretion in refusing to allow the plaintiffs to introduce additional evidence in rebuttal as to the cause of the fire.

We are of the opinion that the ruling of the trial court was too restrictive and the plaintiffs should have been allowed to explain if possible that the condition of the furnace after the fire was consistent with their theory as to how the fire started. The judgment must, therefore, be reversed and the cause remanded for a new trial.

It is unnecessary to consider the other assignment of error.

The judgment of the District Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.