STATE OF NEBRASKA, APPELLEE, V. FREDERICK E. MCSWINE, APPELLANT.

438 N.W.2d 778

Filed April 21, 1989.   No. 88-391.

John R. Doyle, of Doyle & Doyle Law Office, for appellant.

Frederick E. McSwine, pro se.

Robert M. Spire, Attorney General, Dale A. Comer, and William L. Howland for appellee.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and KNAPP and ROWLANDS, D. JJ.

PER CURIAM.

The defendant, Frederick E. McSwine, was charged as a habitual criminal with two counts of willful failure to appear. After trial to a jury, he was convicted and sentenced to imprisonment for 10 years on each count, the sentences to run concurrently. He has appealed and contends that his trial was in violation of his rights under the interstate agreement on detainers act, Neb. Rev. Stat. §§ 29-759 et seq. (Reissue 1985); that the trial court erred in refusing to admit testimony of his former counsel; and that he should not have been sentenced as a habitual criminal.

The first assignment of error relates to charges of forgery and burglary that had been filed against the defendant in

Lancaster County, Nebraska. The information charging second degree forgery was filed June 27, 1985, and was known as case No. 68-234. The information charging burglary was filed on July 19, 1985, and was known as case No. 68-278.

On August 8, 1985, the defendant appeared in person in the district court to make bond on both cases. At that time the defendant was sworn by the district judge, and the defendant acknowledged under oath that he would appear on August 20, 1985, on case No. 68-234 and at such other times as he might be ordered to appear, and would remain in Lancaster County. He further acknowledged under oath that he would appear on September 9, 1985, for trial in case No. 68-278 or at such other times as he might be ordered to appear, and would remain in Lancaster County. The district judge at that time warned the defendant that if he did not appear for trial on September 9, 1985, the bond could be forfeited, a warrant could be issued for his arrest, and he could be liable for all costs incurred in his apprehension and return. A similar warning was given as to his appearance on August 20, 1985, in case No. 68-234.

When the defendant failed to appear for trial on September 9, 1985, his bond was forfeited and a bench warrant issued for his arrest. When he failed to appear for trial on October 29, 1985, in case No. 68-234, his bond in that case was forfeited and a bench warrant issued for his arrest.

The defendant did not remain in Lancaster County, as he had promised he would, but was apprehended in the State of Washington and charged with burglary. He was in prison in Washington until June 1987.

On June 30, 1986, the defendant signed a waiver of extradition to Nebraska for trial on the forgery and burglary charges pending in Nebraska. He was not returned to Nebraska until June 17, 1987. Apparently, the defendant was never tried on the forgery and burglary charges in Nebraska, and they were dismissed.

Any rights the defendant may have had under the interstate agreement on detainers act related to the forgery and burglary cases and not to this case. The first assignment of error is without merit.

The information in this case was filed on September 14,

1987, after the defendant had been returned to Nebraska. Count I alleges that the defendant willfully failed to appear on September 9, 1985, for trial in case No. 68-278. Count II alleges that he willfully failed to appear on October 29, 1985, for trial in case No. 68-234.

The second assignment of error relates to testimony of Joseph Nigro, a deputy public defender in Lancaster County, which the defendant attempted to introduce in regard to count I. Nigro had been appointed to represent the defendant in the burglary and forgery cases. The State had made a motion in limine to exclude the testimony of Nigro as hearsay and not relevant. Before ruling on the motion in limine, the trial court permitted the defendant to make an offer of proof by question and answer out of the presence of the jury.

In the offer of proof, Nigro testified in part as follows:

According to my notes in the case at 68, . . . Page 278 [burglary], when I saw Mr. McSwine on August 20, the notes that I made after the conversation were that I told him to stay out of trouble and to get a job. I also noted that I will try to — that I told him that I will try to negotiate with the prosecutor after the September jury term. And obviously I saw Mr. McSwine on August 29th when he was arraigned on the second case. I would say that the way things work in Lancaster County District Court all cases are set for the next jury term.

. . . .

. . . All cases are set for the next jury term. But obviously 100 cases don't go to trial on the same day. The, generally, the oldest cases are the cases that are called for trial and cases that do wind up going to trial generally don't go to trial for two or three jury terms after the arraignment. And I would say it's a practice of defense attorneys in Lancaster County to tell their clients that they do not need to be present for the beginning of the next jury term but to remain in contact with the attorney so they can be advised when the case is called for trial. But it is not the practice of the district court to require all defendants to be present for that beginning day of the jury term and then 98 defendants are told to go home and two defendants are

told to remain for trial. And so in practice, I tell all of my clients that they don't need to be there for the beginning of the jury term but to stay in touch with me and, based on my notes, where I indicated that I would try to negotiate with the prosecutor after the September jury term, that makes me fairly certain that I told Mr. McSwine his case would not be called for trial and that after the jury term was over when I was less busy I would try to see if something could be worked out in the case.

. . . .

Q. . . . What's your best recollection as what you told McSwine as to whether or not he would have to be in district court on September the 9th, 1985?

A. My best recollection would be that when I saw him on August 20 and then again on August 29th that I probably told him that his case would not come to trial, that therefore he wouldn't need to be there and that he should stay in contact with me. My notes indicate when I spoke to Mr. Colborn on September 9th I noted that Mr. — my notes says Colborn thinks that defendant was ordered to appear at 9 o'clock today, and my recollection would be that on September 9th that John Colborn called me up and said, "I think Fred was ordered to appear," that he had recalled the bond form, and — but that he was perhaps not certain. We went in and checked the file. There was the bond form. And at that time the case was called up. And I was unable to reach Mr. McSwine on the morning of September the 9th.

. . . .

. . . I would guess almost certainly on the case that was arraigned on August 29th [forgery], which would be just a few days before the jury term, that I would have told Mr. McSwine that that case would not come up. And generally district court orders defendants — they tell them that their case is set for September 9th or as soon as the same could be reached. So, in effect, they're not required to be there on that day. And, of course, on the case where he was arraigned on August 29th, that case was not called up until October.

Q. . . . Have you, in fact, when the case was a recently arraigned case, within the last month and now he's right up in front of the district court, have you told defendants, in fact you're not going to be tried this time, you're not going to have to come?

A. That's what I would virtually always tell defendants when they're arraigned, just within a couple of weeks before the next jury term, and oftentimes defendants do — they get confused, and I have to explain to them that, you know, the Court may say it's set for this jury term, that they may not go to trial for three or four months, because the older cases are tried first. And only so many cases can be tried during a single jury term.

Q. And the cases that have been on file longer are the ones that get called up first; is that correct?

A. Yes.

On cross-examination, Nigro testified:

Q. Mr. Nigro, you don't have any independent recollection of telling the defendant that he didn't have to show up on September 9th of 1985; do you?

A. No.

Q. And your notes don't reflect that you told him he did not have to show up on September 9th of 1985?

A. No, the notes don't specifically say that.

The court sustained the objection of the State to the offer of proof, finding, "This witness has no independent recollection of telling the defendant that he did not need to appear, and I think that's it."

The defendant contends that this ruling was erroneous and that Nigro should have been allowed to testify.

The admission or exclusion of evidence is a matter within the sound discretion of the trial court, whose ruling on an evidential question will be upheld unless such ruling constitutes an abuse of discretion. *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986); *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987).

Few rights are more fundamental than that of an accused to present witnesses in his own defense. *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

In *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L.

Ed. 2d 1019 (1967), the U.S. Supreme Court said:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

The State claims that Nigro was incompetent to testify as to what he told the defendant regarding his obligation to appear in court because Nigro could not recall with certainty the content of his communications with the defendant. The trial court apparently agreed with the State's position and, therefore, excluded Nigro's testimony concerning any contact with the defendant.

Of course, a defendant in a criminal case has no constitutionally protected right to present irrelevant evidence or adduce evidence from an incompetent witness. However, defendant unquestionably established Nigro's firsthand observations regarding communications between Nigro and the defendant, although Nigro was unable to recall with precision the content of the communications. As noted in McCormick on Evidence § 10 at 24-25 (E. Cleary 3d ed. 1984):

> While the law is exacting in demanding firsthand observation, it is not so impractical as to insist upon preciseness of attention by the witness in observing, or certainty of recollection in recounting the facts. Accordingly, when a witness uses such expressions as "I think," "My impression is," or "In my opinion," this will be no ground of objection if it appears that he merely speaks from an inattentive observation, or an unsure memory.

Rather than exclude a witness' testimony when the witness is unable to precisely recall events, the modern trend is to allow the witness to testify, allowing the fact finder to consider the witness' memory as one factor affecting the weight to be given

the testimony. See, *State In Interest of R. R.*, 79 N.J. 97, 398 A.2d 76 (1979); *Weeks v Feltner*, 99 Mich. App. 392, 297 N.W.2d 678 (1980) (witness' testimony that she "believed" that a window was closed on a particular night was admissible; witness' memory affects only the weight to be given her testimony); *State v. Pridgen*, 313 N.C. 80, 326 S.E.2d 618 (1985) (witness' testimony that the defendant's photograph most closely resembled the perpetrator, but that she "couldn't be sure," was admissible; equivocal nature of testimony goes only to its weight). See, also, 2 J. Wigmore, Evidence in Trials at Common Law § 658(b)(2) at 895 (J. Chadbourn rev. 1979):

> "Belief" or "impression" may signify the degree of positiveness of the witness' recollection; i.e. may signify that he obtained entirely clear and positive impressions at the time, but that since then his memory has faded, and his recollection today is so weak that he is not able to call it more than an "impression" or to say more than "I think." The deficiency comes merely in the quality of his recollection. Here again, the law makes no objection on such grounds. It welcomes whatever quality of recollection he is able to bring.

(Emphasis omitted.)

Nigro testified that he was almost certain that he told, and likely did tell, McSwine that his case would not be called on September 9, 1985. This testimony was relevant to the issue of McSwine's "willful" failure to appear. Neb. Rev. Stat. § 29-908 (Reissue 1985). The trial court improperly excluded Nigro's testimony, and this ruling prejudiced McSwine. The defendant's conviction on count I for failure to appear must therefore be reversed, and the defendant tried anew on this charge.

The defendant's third assignment of error relates to the records of his previous convictions that were used to prove that he was a habitual criminal. The defendant attempted to attack these convictions collaterally on the ground the records did not show the defendant had been advised at the time he pleaded to the prior offenses that those convictions could be used to enhance the penalty for a future conviction.

A warning that "continued felonious conduct could be detrimental to a felon's freedom" has never been a requirement

at any point in the sentencing procedure. In *State v. Oliver*, 230 Neb. 864, 869, 434 N.W.2d 293, 297 (1989), we held: "[T]o prove a prior conviction for enhancement purposes, the State need only show that at the time of the prior conviction the defendant had, or waived, counsel."

> It has also been the rule in this State that a defendant cannot collaterally attack a prior conviction in an enhancement proceeding. . . . Objections to the validity of a prior conviction offered for the purpose of sentence enhancement, beyond the issue of whether the defendant had counsel or waived the right to counsel, constitute a collateral attack on the judgment, and must be raised either by a direct appeal from the prior conviction or in separate proceedings commenced expressly for the purpose of setting aside the prior conviction.

(Citations omitted.) *Id.*

In *State v. Slezak*, 226 Neb. 404, 411 N.W.2d 632 (1987), the defendant claimed his prior guilty pleas were not entered knowingly, intelligently, and voluntarily, thereby making his prior convictions invalid. This court held: "[T]he State's burden in proving a valid prior conviction for enhancement purposes is only to show that the defendant had counsel or knowingly and voluntarily waived counsel at the time of such conviction." *Id.* at 407, 411 N.W.2d at 634.

The record shows that McSwine had counsel at the time of his prior guilty pleas. The fact that he was not warned of possible enhancement does not invalidate the prior convictions, nor does it make the finding that he is a habitual criminal in the present case improper.

We have considered the separate brief filed by the defendant pro se and find that none of the contentions made therein have merit.

The judgment on count I is reversed and the cause remanded for a new trial; the judgment on count II is affirmed.

JUDGMENT ON COUNT I REVERSED AND REMANDED FOR A NEW TRIAL. JUDGMENT ON COUNT II AFFIRMED.

BOSLAUGH, J., dissenting in part.

I dissent from that part of the opinion which holds that it was an abuse of discretion for the trial court to refuse to admit the

offered testimony of the witness Nigro.

Assuming that the testimony offered was relevant, I do not agree that it was an abuse of discretion to refuse to permit a witness to testify who was unable to testify either from present recollection or past recollection recorded.

This is not a case involving a careless observer, an inattentive witness, or a witness who is unable to remember the exact words which were spoken in a conversation. Nigro was unable to remember *whether* he told the defendant he did not need to appear for trial on September 9, 1985.

The two conditions of the recognizance, that the defendant not leave Lancaster County and that he appear for trial on September 9, 1985, were related. The purpose was to ensure that the defendant would be available to the court. There is no suggestion that Nigro told the defendant that he could leave the state.

Nigro stated flatly that he had no independent recollection of telling the defendant that he did not need to appear for trial on September 9, 1985, and that his notes did not specifically show that he had done so.

There is a vast difference between telling a defendant that it is probable that his case will not be tried on a date certain and telling him that he does not need to appear on the date the case has been set for trial, especially after the defendant has taken an oath in open court that he will not depart the county and will appear for trial on the date stated.

Here, the witness was not only unable to recall what he may have told the defendant, but he was unable to state that he remembered telling the defendant he did not need to appear for trial on the date set by the trial court. Under these circumstances it was within the discretion of the trial court to refuse the offer of proof.