STATE OF NEBRASKA, APPELLEE, V. PHILIP FAHLK, APPELLANT.

524 N.W.2d 39

Filed November 18, 1994.    No. S-92-1180.

David A. Domina and Denise E. Frost, of Domina & Copple, P.C., for appellant.

Don Stenberg, Attorney General, J. Kirk Brown, and, on brief, Donald A. Kohtz for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and BOSLAUGH, J., Retired.

LANPHIER, J.

Following a jury trial in Otoe County District Court, Philip Fahlk was convicted of theft by unlawful taking and of obstruction of government operations. The jury found that Fahlk, a superintendent for the Nebraska City Public School District, committed theft by unlawful taking when he took a computer from the school where he worked, in violation of Neb. Rev. Stat. § 28-511(1) (Reissue 1989). The jury further found that Fahlk obstructed government operations, in violation of Neb. Rev. Stat. § 28-901(1) (Reissue 1989), by giving a purported equipment checkout sheet to investigators inquiring about the missing computer. Fahlk was sentenced to 1 year of probation followed by 30 days in the Otoe County jail. Fahlk, thereafter, appealed to the Nebraska Court of Appeals.

Fahlk's assignments of error to the Court of Appeals alleged that the trial court erred in (1) preventing him from offering direct testimony that he did not intend to commit the crime of theft; (2) excluding evidence that the school board generally consented to the taking; (3) allowing the State to comment in closing argument that Fahlk's wife did not testify, therefore commenting on his assertion of the marital privilege; (4) improperly admitting rebuttal testimony that calls were made from Fahlk's home telephone to a witness; and (5) concluding that the weight of the evidence supported his convictions. See *State v. Fahlk*, 2 Neb. App. 421, 510 N.W.2d 97 (1993).

The Court of Appeals affirmed the judgment of the district court. See *Fahlk, supra*. Fahlk petitioned this court for further review. We granted the petition. Upon review of the assigned

errors, we hold that evidence regarding consent of the school board to the taking was relevant and should have been admissible. We further hold that the admission of the rebuttal testimony was improper. Accordingly, we reverse Fahlk's conviction of theft by unlawful taking. We reverse Fahlk's conviction of obstruction of government operations because the State failed to prove the requisite elements of that crime.

## BACKGROUND

Fahlk was employed as the superintendent of the Nebraska City Public School District beginning July 1, 1991. Fahlk's initial duties included negotiating teacher contracts and preparing the Nebraska City Public Schools' budget. Fahlk testified that the school district had not equipped the superintendent's office with a computer, so he borrowed an Apple IIc computer from an elementary school and brought his family's computer printer to work in order to accomplish his duties.

On August 22, 1991, several computer printers were delivered to the superintendent's building for use in the senior high school. Jodi Rathe, an administrative assistant and bookkeeper for the school district, testified that she signed an invoice acknowledging the delivery of the three printers. The printers were placed in a locked kitchen area for overnight storage.

Another employee of the Nebraska City school system, William Lambrecht, testified that three printers were in the kitchen when he arrived at work on August 23, 1991, at approximately 7 a.m. Lambrecht returned to the kitchen area at approximately 7:20 a.m. At that time, Fahlk was present in the kitchen and only two printers remained.

Shortly thereafter, Rathe entered and noticed that one of the printer boxes was missing. Rathe conducted a thorough search for the printers with Lambrecht's help. They soon determined that none of the employees in the building had any knowledge of the printer.

Fahlk had left the building to attend a breakfast meeting; therefore, Rathe left a note on Fahlk's desk explaining the situation. As soon as Fahlk returned to the school, Rathe

provided him with the serial number of the missing machine and suggested that he call the police. Rathe gave Fahlk the invoice to refer to during his police report and then briefly left Fahlk's office. Upon her return, Fahlk said he had notified the police and handed the invoice to Rathe. Beside the serial number of the missing printer on the invoice was the notation "reported."

Shortly thereafter, Fahlk left the office in order to deliver the school budget in Lincoln. Fahlk also planned to help his daughter, Nicole Fahlk, move into her dormitory room at the University of Nebraska at Lincoln.

Fahlk wanted his daughter to have the use of the family's printer while at college. Fahlk testified that he had disconnected the family's printer from the computer system he had been using at work after working late at the office on August 22 and had placed it in his car. Fahlk claimed that he brought his family's computer printer to Lincoln and set it up in his daughter's dorm room on August 23.

Fahlk testified that he took a printer from the "gymnasium area" on the morning of August 23 in order to replace his family's printer. The gymnasium area is the same area of the school that the other witnesses referred to as the kitchen. Fahlk unpacked the printer and placed it under his desk. Fahlk claimed that no one had ever told him that the missing printer was a printer missing from the kitchen area.

On direct examination, Nicole Fahlk testified at first that her father did not bring a computer printer to her dorm on August 23. During cross-examination, however, Nicole stated that her father had delivered the family's printer to her dorm room on the day she moved in.

According to Fahlk, his family's printer proved to be better suited to the programs he used in his work than was the school district's printer. Fahlk testified that on September 18, 1991, (almost a month after the school district's printer was reported missing), he went to Lincoln and installed the school district's printer in his daughter's room. He then took his family's printer from his daughter's room in Lincoln and brought it back to his office.

On April 1, 1992, the formal investigation into the missing

printer was initiated. On that date, an investigator with the UN-Lincoln police department went to Nicole Fahlk's dorm room and informed her that she might be in possession of stolen computer equipment. The investigator examined Nicole's printer and determined that it did not have a serial number. After the investigator left, Nicole called her father and told him that the police had examined the computer.

On April 2, 1992, Nebraska State Patrol Investigator Terry Becker went to Fahlk's office to question him about the missing printer. Fahlk denied any knowledge of the printers that had been delivered to the school on August 22, 1991, and denied reporting a missing printer to the police. Becker asked Fahlk if a printer belonging to the Nebraska City school system was in the possession of his daughter. Fahlk indicated that his daughter had a printer which belonged to the school district. Fahlk told Becker that he had exchanged the school district's printer for his family's printer, which his daughter was using, because he wanted to use his family's printer with the computer system in his office at the Nebraska City school.

Fahlk testified that he never asked for the specific permission of the school board before he took the printer. However, after Becker's visit, Fahlk notified several members of the board of education by memorandum of the situation and asked for the board president's formal authorization. Fahlk stated in his memo that no secret had been made of the printer exchange and pointed out that his use of his personal equipment in support of the superintendent's office was not new. Fahlk indicated that the purpose of the memo was not to seek a board motion and vote; rather, Fahlk wanted the president's "informed signature." The matter was never presented to the entire board for a vote.

Becker returned to Fahlk's office on April 10, 1992, for further questioning. During this second visit, Fahlk acknowledged that he had taken one of the printers from the school's kitchen on August 23, and produced a signed checkout sheet. The checkout sheet contained a description of the equipment and its serial number and was dated September 18, 1991. Fahlk also showed Becker his calendar reflecting a "squeezed-in" entry on September 18, 1991, noting a printer

exchange with his daughter. Finally, Fahlk gave Becker a copy of his memorandum to the school board detailing the printer exchange and the reason for the exchange.

Fahlk testified that he did not produce the checkout sheet during his first meeting with Becker because Becker did not ask for it. However, the checkout sheet Fahlk produced was not the same form that was approved for use by the school district in September 1991. The approved form required the signatures of the school administrator and the media specialist. The checkout form that Fahlk produced required only his signature.

Fahlk was charged with theft by unlawful taking, in violation of § 28-511(1), and with obstructing government operations, in violation of § 28-901(1). Fahlk was found guilty of both counts. After the Court of Appeals affirmed his convictions, Fahlk petitioned this court for further review. We granted further review.

## ASSIGNMENTS OF ERROR

Fahlk asserts that the Court of Appeals erred in (1) deciding that evidence which might indicate Fahlk did not intend to commit the crime of theft by unlawful taking was not relevant, (2) holding that reference during the State's closing argument to the failure of Fahlk's wife to testify did not prejudicially affect a substantial right of Fahlk's and also that Fahlk failed to preserve the error for appellate review, (3) holding that Fahlk's objection to the State's rebuttal evidence that someone had telephoned a witness from Fahlk's home was not specific enough to preserve the error for appellate review, and (4) affirming Fahlk's conviction for obstruction of government operations by reviewing the evidence in light of a different criminal statute than that under which he was charged.

## STANDARD OF REVIEW

With regard to those issues concerning the exclusion of evidence, we note that " '[a] ruling pursuant to Neb. Evid. R. 403 for exclusion of relevant evidence will be upheld on appeal unless the ruling is an abuse of discretion.' " *State v. Dixon*, 240 Neb. 454, 456, 482 N.W.2d 573, 575 (1992); *State v. Lonnecker*, 237 Neb. 207, 465 N.W.2d 737 (1991).

[A] judicial abuse of discretion exists when a judge, within

the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.
*State v. Juhl*, 234 Neb. 33, 43, 449 N.W.2d 202, 209 (1989).

The abuse of discretion standard is also applied to our review of the trial court's ruling on the admissibility of the rebuttal testimony. See, *State v. Pratt*, 197 Neb. 382, 249 N.W.2d 495 (1977); *State v. Keith*, 189 Neb. 536, 203 N.W.2d 500 (1973).

On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Cook*, 244 Neb. 751, 509 N.W.2d 200 (1993); *State v. Williams*, 239 Neb. 985, 480 N.W.2d 390 (1992).

All other issues addressed concern questions of law. When deciding questions of law, this court is obligated to reach conclusions independent of those reached by the trial court. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993).

## EXCLUSION OF EVIDENCE

Fahlk asserts that the Court of Appeals erred in deciding that evidence which might indicate Fahlk did not intend to commit the crime of theft by unlawful taking was not relevant. The trial court precluded Fahlk from offering his own direct testimony regarding his state of mind during the alleged theft. See *State v. Fahlk*, 2 Neb. App. 421, 510 N.W.2d 97 (1993). Additionally, Fahlk was precluded from offering evidence regarding the school board's consent to the printer exchange.

## DIRECT TESTIMONY OF LACK OF INTENT

First, Fahlk objects to the trial court's rulings with regard to his direct testimony. Fahlk sought to testify as follows:

[Fahlk's counsel:] Mr. Fahlk, when you took the school district's ImageWriter II printer to Lincoln and brought your own ImageWriter back here, was it your intention to

keep the school district's property?

[Fahlk:] No.

[Prosecutor:] Objected to as invading the province of the Jury, and move to strike.

THE COURT: Sustained.

[Shortly thereafter, this exchange took place:]

[Fahlk's counsel:] Did you steal anything from the Nebraska City School District?

[Fahlk:] No.

[Prosecutor:] Objected to as invading the province of the Jury, and move to strike.

[THE COURT:] Sustained.

Fahlk sought to testify regarding the ultimate issue in this case: his guilt or innocence. "Such testimony, if believed, is clearly material to [the defendant's] defense, for it goes to the heart of the offense—whether [the defendant] intentionally violated the relevant statutes." *State v. Stott*, 243 Neb. 967, 978, 503 N.W.2d 822, 831 (1993). Defendants may testify regarding their intent, or lack of intent, to commit the offenses with which they have been charged. See *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993).

Although the trial court erred in refusing to allow Fahlk to testify regarding his lack of intent, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected. Neb. Evid. R. 103, Neb. Rev. Stat. § 27-103 (Reissue 1989); *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). No substantial right of Fahlk's was affected by the trial court's refusal to admit Fahlk's opinions regarding his own guilt or innocence, because, as the Court of Appeals correctly noted, the substance of Fahlk's disputed testimony was placed before the jury.

The trial court allowed Fahlk to testify that "it was my intention that after negotiations for the 91-92 contract were completed, to take them [the printers] back, to reexchange them." Further, Fahlk was able to put his letter to the board of education into evidence. This letter explained Fahlk's reasons for the exchange and stated that the exchange was not intended to be permanent.

Therefore, Fahlk was able to put evidence before the jury

regarding his lack of intent. No substantial right of Fahlk was affected by the trial court's refusal to admit Fahlk's opinions regarding his own guilt or innocence; thus, no error may be predicated on the trial court's ruling that Fahlk was not entitled to testify about his state of mind during the alleged theft.

## EVIDENCE OF SCHOOL BOARD'S CONSENT

Fahlk also sought to offer evidence regarding the school board's consent to the printer exchange. In response to the State's pretrial motion in limine, the trial court prohibited Fahlk from eliciting testimony or presenting evidence to show that the board of education had either condoned or ratified any alleged criminal behavior on the part of Fahlk.

At trial, Fahlk offered the testimony of Ann Nienkamp, president of the Nebraska City Board of Education, regarding board authorization of Fahlk's use of school property. In an offer of proof, Fahlk's attorney stated that if Nienkamp were allowed to testify, she would testify that

she and the board of education did in fact charge the defendant with the responsibility for completing budget work, teacher negotiations work, bond issue work, computer acquisition work, and school asbestos removal work in whatever means that he could accomplish those tasks with all due dispatch and that he was authorized and permitted to use his own equipment to accomplish those tasks and that the board of education neither voiced nor indicated an objection and indeed shared and communicated to the defendant a willingness to permit him to do so on terms that would allow the use of his equipment by the school district and equipment owned by the school district of lesser value and lesser utility by him or members of his family at that same time that the school district was using his computer.

Following the offer of proof, the trial court questioned Nienkamp outside the presence of the jury. The court probed the witness to determine if the board had given explicit prior consent to Fahlk to exchange his family's printer for the school printer. After the witness responded negatively, the trial court restated its prior ruling that any evidence of subsequent

condonation of an unlawful act is not relevant or admissible. Counsel for Fahlk attempted to explain that his "intention in reciting that narrative offer was not to suggest that I would elicit from this witness testimony about ratification of the defendant's conduct after the fact."

Fahlk asserts that the Court of Appeals erred in affirming the trial court's exclusion of evidence regarding consent of the school board to the computer printer exchange. The Court of Appeals held that such evidence was not relevant because "the existence of the board's permission, or the lack thereof, is not a fact of consequence in this case and is therefore not material evidence." *State v. Fahlk*, 2 Neb. App. 421, 430, 510 N.W.2d 97, 103 (1993).

In order to decide this issue, this court must first determine whether the testimony as to the existence of the board's consent to Fahlk's exchange of the school's printer for his family's printer would have been relevant to the issues in the case and therefore admissible. "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 1989).

> Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989).
>
> There are two components to relevant evidence: " '[M]ateriality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is "in issue," that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law. . . .
>
> " 'The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. . . .' "

*State v. Bell*, 242 Neb. 138, 141, 493 N.W.2d 339, 342-43 (1992).

Is evidence regarding an owner's consent relevant to the issues in this case? Fahlk was charged with violating § 28-511(1). Section 28-511 states that "[a] person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." Conduct denominated theft in Neb. Rev. Stat. §§ 28-509 through 28-518 (Reissue 1989) constitutes a single offense encompassing the previously separate offenses known as larceny, embezzlement, false pretenses, etc. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

"Section 28-511(1) proscribes or condemns only that conduct in which criminal intent is present, distinguishing theft from activity which is otherwise permissible as noncriminal conduct." *Copple*, 224 Neb. at 682, 401 N.W.2d at 150. The statutory prohibitions of § 28-511(1) must be read with other pertinent parts of the Nebraska Criminal Code. *Copple, supra.* The definitional statute pertaining to the crime of theft states that "[p]roperty of another shall mean property in which any person other than the actor has an interest which the actor is not privileged to infringe." Neb. Rev. Stat. § 28-509(6) (Reissue 1989).

If Fahlk was privileged to exchange his family's printer for the school's printer by virtue of the school board's consent, then Fahlk would have a complete defense to the crime of theft. Although the general rule is that consent of the victim is not a defense to a crime,

> [a] crime may be so defined that the absence of the victim's consent is an element thereof. Since, in such case, the presence of the victim's consent would negate an element of the crime, consent would be a defense. Thus, consent destroys the criminal character of an act of . . . taking the property of another which would otherwise constitute larceny.

1 Charles E. Torcia, Wharton's Criminal Law § 46 at 302-04 (15th ed. 1993). See, also, 21 Am. Jur. 2d *Criminal Law* § 189 (1981).

Prior consent or privilege to use the property of another must be distinguished from subsequent condonation by the owner. "Condonation or ratification is, generally speaking, no defense

to a crime." *State v. Higgin*, 257 Minn. 46, 50, 99 N.W.2d 902, 906 (1959). "[A] crime is by definition a public wrong against the State, it is not usually an acceptable defense that the person wronged by a criminal has condoned the offense." *Pratt v. State*, 167 Ga. App. 819, 820, 307 S.E.2d 714, 716 (1983).

In the case before us, the trial court properly excluded evidence regarding condonation or ratification. However, the court may also have excluded evidence regarding prior implied or general consent—"throwing out the baby with the bath water," so to speak.

In rejecting Fahlk's assignment of error regarding the relevancy of Nienkamp's testimony, the Court of Appeals erred in holding that the existence of an owner's (i.e., the school board's) permission, or lack thereof, is not a fact of consequence in this case involving a charge of theft by unlawful taking. *State v. Fahlk*, 2 Neb. App. 421, 510 N.W.2d 97 (1993). Consent is a valid defense to a charge of theft by taking. That consent may be implied or general consent.

Fahlk was deprived of the opportunity to present testimony regarding the board's alleged prior implied or general consent to his taking of school property. Few rights are more fundamental than that of an accused to present witnesses in his own defense. *State v. McSwine*, 231 Neb. 886, 438 N.W.2d 778 (1989) (citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). In that case, we reversed the defendant's conviction for the reason that he was not allowed to put on a witness whose testimony related to the proffered defense.

" 'The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. . . .' " *McSwine*, 231 Neb. at 892, 438 N.W.2d at 781 (quoting *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)).

Of course, defendants in criminal cases have no right to present irrelevant evidence or adduce evidence from an incompetent witness. *McSwine, supra.* As discussed above, the testimony of the school board's president regarding prior implied or general consent was relevant. Accordingly, Fahlk

was partially deprived of his right to present a defense to the charge of theft.

## CLOSING ARGUMENT COMMENT REGARDING MARITAL PRIVILEGE

Fahlk asserts that the Court of Appeals erred in holding that Fahlk failed to preserve any error for appellate review arising from the State's reference to the assertion of the marital privilege in its closing argument. This assignment of error arises out of the inconsistent testimony of the defendant's daughter, Nicole Fahlk. During direct examination, Nicole testified that her father did not bring a computer printer to her dorm on August 23, 1991. However, earlier in her testimony, Nicole had stated that her father came to her dorm a few weeks after school started and exchanged a gray printer for a white printer. The Fahlk family printer was white. The school district's printer was gray. During cross-examination, Nicole stated that her father had delivered the white printer to her dorm room on the day she moved in.

The prosecutor, during his rebuttal closing argument for the State, commented:

> Poor Nicole got to go home tonight, but she said [sic] up here and testified that her dad only came down there two times with printers; once after Labor Day — we all know when Labor Day is — and once on April 5. He didn't come down there on the 23rd. If he did, there was a third person who's [sic] there. You didn't hear from the third person, did you? It's Mrs. Fahlk.

Fahlk's counsel timely objected and was overruled. The court denied Fahlk's request to admonish the jury.

Comment regarding the assertion of marital privilege is prosecutorial misconduct. The claim of a privilege is not a permissible subject of comment by judge or counsel. Neb. Evid. R. 513, Neb. Rev. Stat. § 27-513 (Reissue 1989).

However, Fahlk failed to preserve for appellate review any error arising from the prosecutor's misconduct. " 'When a party has knowledge during trial of irregularity or misconduct, he must timely assert his right to a mistrial.' " *State v. Morrow*, 237 Neb. 653, 661, 467 N.W.2d 63, 69 (1991) (quoting *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984)). "One may

not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error." *State v. Myers*, 244 Neb. 905, 915, 510 N.W.2d 58, 67 (1994). Fahlk's failure to move for a mistrial waived any error resulting from the prosecutor's misconduct.

## IMPROPER REBUTTAL

In his third assignment of error, Fahlk asserts that the Court of Appeals erroneously held that Fahlk's objection to the State's rebuttal evidence was inadequate to preserve the error for appellate review. Although the Court of Appeals agreed that the testimony was improper rebuttal, it reached that conclusion on the basis of different grounds than those urged by Fahlk at trial and in his brief to the Court of Appeals.

This assignment of error arose out of the testimony of Rathe, who was called by the State as a rebuttal witness at the end of trial. Rathe, a key witness against Fahlk, testified that Fahlk called her three times on October 6, 1992, a week before trial. Rathe's home was equipped with a caller identification device. The State produced three photographs of the device which indicated that calls had been placed from Fahlk's home telephone number to Rathe.

Rathe's rebuttal testimony contradicts Fahlk's testimony during his cross-examination. On cross, the State asked Fahlk if he had placed any phone calls to Rathe on October 6, 1992. Fahlk responded that he did not remember making any calls, and in response to two subsequent questions simply responded, "No," that he had not placed any calls to Rathe.

At trial, Fahlk objected to Rathe's rebuttal testimony on grounds of relevancy and improper rebuttal. Fahlk's request for a continuing objection was granted. After Rathe was excused, a conference was held outside the presence of the jury. The court refused Fahlk's request to present surrebuttal witnesses whose testimony would attempt to establish that Fahlk was not at home at the time the phone calls were made. At the end of that discussion, Fahlk moved for a mistrial "based on the Court's rulings on admitting the rebuttal evidence, refusing to strike that evidence on the motion, and/or refusing to allow surrebuttal." The motion was denied.

In his brief to the Court of Appeals, Fahlk argued that the trial court abused its discretion in allowing the State's rebuttal evidence. In support of his argument, Fahlk asserted that "[r]ebuttal evidence is confined to that which explains, disproves, or counteracts evidence introduced by the adverse party." *Wright v. Forney*, 233 Neb. 258, 260, 444 N.W.2d 895, 896 (1989) (citing *Cromer v. Farmland Service Coop, Inc.*, 198 Neb. 355, 252 N.W.2d 635 (1977)).

Fahlk contends that he did not introduce any evidence regarding the alleged calls to Rathe. The only testimony regarding the calls was elicited by the State during cross-examination. Fahlk argued to the Court of Appeals that Rathe's testimony was improper rebuttal because it was not offered to explain, disprove, or counteract any evidence that had been offered by the defense. Fahlk further asserted that Rathe's rebuttal testimony was improper because it gave the State the opportunity to present evidence that should have been presented in its case in chief.

The Court of Appeals agreed with Fahlk that Rathe's testimony was improper rebuttal, but rested its decision on a different rule of law than that argued by Fahlk. See *State v. Fahlk*, 2 Neb. App. 421, 510 N.W.2d 97 (1993). The Court of Appeals stated that it was "clear that Rathe's testimony was offered solely to attack Fahlk's credibility by showing that Fahlk's earlier denial of making calls to Rathe's phone number on the afternoon of October 6, 1992, was untrue." 2 Neb. App. at 433, 510 N.W.2d at 104. The Court of Appeals noted that extrinsic evidence of specific instances of the conduct of a witness, other than conviction of crimes in some situations, may not be used for the purpose of attacking a witness' credibility. See Neb. Evid. R. 608(2), Neb. Rev. Stat. § 27-608(2) (Reissue 1989). Therefore, Rathe's testimony violated Neb. Evid. R. 608(2).

Further, the Court of Appeals noted that Fahlk had objected to Rathe's testimony on the grounds of relevancy and improper rebuttal. Neb. Evid. R. 103(1)(a) requires that an appellant claiming reversible error as the result of admission of evidence must have made a timely objection stating the specific objection, if a specific objection was not apparent from the

context. According to the Court of Appeals, Fahlk's objections on grounds of relevancy and improper rebuttal were not sufficient to raise an objection on grounds of a violation of Neb. Evid. R. 608(2). The court stated that Fahlk had failed to "state a specific objection by reference to a particular rule or by language contained in an evidential rule, as required by the rules of evidence and case law." *Fahlk*, 2 Neb. App. at 434, 510 N.W.2d at 105.

Although we agree with the Court of Appeals that the State's rebuttal testimony was objectionable under Neb. Evid. R. 608(2), Fahlk did not make an objection on those grounds or raise that argument to the Court of Appeals. We have previously admonished counsel regarding the function of proper objections. In *State v. Coleman*, 239 Neb. 800, 812, 478 N.W.2d 349, 357 (1992), we stated that

> a true objection does not wander among the Nebraska Evidence Rules in the hope of eventually ending its odyssey at the doorstep of a particular rule of evidence. In seeking to exclude evidence, counsel must adhere to a basic and straightforward approach: Tell the court the reason why the evidence is inadmissible!

Fahlk told the district court that he objected to Rathe's testimony on the grounds of improper rebuttal and relevancy. Fahlk's objections were timely and were followed by a motion to strike and a motion for mistrial. These motions were sufficient to preserve for appellate review his objections on the bases of relevancy and improper rebuttal.

"An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground." *State v. Schrein*, 244 Neb. 136, 147, 504 N.W.2d 827, 834 (1993) (citing *Havlicek v. State*, 101 Neb. 782, 165 N.W. 251 (1917)). In *Schrein*, the defendant objected on the basis of relevancy and was overruled. Therefore, on appeal, the defendant could not urge upon the court the issue of unfair prejudice. In *Fahlk*, the Court of Appeals committed a similar error in reverse. Fahlk argued improper rebuttal and relevancy, but the Court of Appeals looked only at Neb. Evid. R. 608(2).

In examining the record before us, we determine that the admission of Rathe's testimony was an abuse of discretion for

the reason that it was improper rebuttal. Ordinarily, a trial proceeds in the following order: "[T]he state must first produce its evidence; the defendant will then produce his evidence; . . . the state will then be confined to rebutting evidence, unless the court for good reason in furtherance of justice, shall permit it to offer evidence in chief." Neb. Rev. Stat. § 29-2016 (Reissue 1989). However, a trial court may in its discretion permit the introduction of evidence in rebuttal that is not strictly rebuttal evidence only for good reason and in the furtherance of justice. *State v. Pratt*, 197 Neb. 382, 249 N.W.2d 495 (1977) (quoting *State v. Keith*, 189 Neb. 536, 203 N.W.2d 500 (1973)).

This court has "defined proper rebuttal testimony in a criminal prosecution as ' " 'any testimony, otherwise competent, which tends to dispute the testimony offered on behalf of the accused as to a material fact . . . .' " ' " *State v. Esluer*, 215 Neb. 616, 621, 340 N.W.2d 152, 155 (1983) (citing *State v. Miller*, 213 Neb. 274, 328 N.W.2d 769 (1983)). "Rebuttal evidence is confined to new matters first introduced by the opposing party and not as an opportunity to bolster, corroborate, reiterate, or repeat the plaintiff's case in chief." *Stern v. On Time Freight Sys.*, 1 Neb. App. 302, 309, 493 N.W.2d 348, 353 (1992).

In *Esluer*, the defendant, charged with theft, had during cross-examination denied possession of a specific rare coin. Rebuttal testimony was offered establishing the fact that the coin had been in the possession of the defendant. The defendant argued that such evidence should have been offered in the State's case in chief. However, the rebuttal evidence pertained to a fact material to the theft charge and was offered to dispute defendant's testimony regarding that material fact. In *Esluer*, the rebuttal testimony was proper.

Rathe's testimony regarding the alleged phone calls on October 6, 1992, was not pertinent to any material fact in issue. There was no previous evidence that calls were made or not made and no evidence that Fahlk was even home when the calls were purportedly made to the witness from Fahlk's home. Therefore, the admission of Rathe's rebuttal testimony was an abuse of discretion. Erroneous admission of evidence is harmless error and does not require reversal if the evidence is

cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). Here, the trial court erroneously admitted noncumulative evidence.

Erroneous admission of evidence in a criminal trial is not prejudicial if it can be said that the error was harmless beyond a reasonable doubt. See *State v. Hartmann*, 239 Neb. 300, 476 N.W.2d 209 (1991). See, also, *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994). The sole purpose of Rathe's testimony was to attack the credibility of Fahlk. We cannot determine what damaging effect the testimony may have had upon the jury. Accordingly, because of the damage that Rathe's rebuttal testimony may have caused, its admission was prejudicial error. Fahlk is entitled to a new trial on this basis.

## OBSTRUCTION OF JUSTICE

At the close of the State's case, Fahlk moved the trial court for a directed verdict on count II, obstruction of government operations. Fahlk argued that the State had failed to offer any proof of any actual or intended obstruction of any government operation. Further, Fahlk asserted there was no proof that Fahlk had falsified any document. The court denied Fahlk's motion for a directed verdict.

The Court of Appeals concluded that the evidence was sufficient beyond a reasonable doubt to sustain Fahlk's conviction of obstruction of government operations. See *State v. Fahlk*, 2 Neb. App. 421, 510 N.W.2d 97 (1993). In his last assignment of error, Fahlk asserts that the Court of Appeals erroneously affirmed his conviction of obstruction of government operations. Fahlk contends that the Court of Appeals reviewed the evidence under the wrong criminal statute.

The information against Fahlk charged him with a violation of § 28-901(1). Section 28-901(1) states:

A person commits the offense of obstructing government operations if he intentionally obstructs, impairs, or perverts the administration of law or other governmental functions by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful

act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

We turn now to the question of whether the weight of the evidence supported Fahlk's conviction of obstruction of government operations. On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. *State v. Cook*, 244 Neb. 751, 509 N.W.2d 200 (1993); *State v. Williams*, 239 Neb. 985, 480 N.W.2d 390 (1992). The burden of proof is on the State to prove all of the essential elements of the crime charged. *State v. Nuss*, 235 Neb. 107, 454 N.W.2d 482 (1990).

Section 28-901, the crime with which Fahlk was charged, states that a person commits the offense of obstruction of government operations if he intentionally obstructs, impairs, or perverts the administration of law or other governmental functions by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act. Therefore, to affirm his conviction, we must find that Fahlk (1) committed some physical act, (2) breached an official duty, or (3) committed some other unlawful act with the intent to obstruct the administration of justice.

A penal statute is given a strict construction which is sensible and prevents injustice or an absurd consequence. *State v. Moss*, 240 Neb. 21, 480 N.W.2d 198 (1992). This court has construed § 28-901 in *State v. Douglas*, 217 Neb. 199, 349 N.W.2d 870 (1984). In *Douglas*, we held that failure to volunteer information is not a physical act that violates § 28-901. Nor are mere words, even those words deliberately intended to frustrate law enforcement, physical acts under § 28-901. *Douglas, supra* (but see *id*. (Shanahan and Grant, JJ., and Moran, D.J., dissenting and stating that no physical act should be required to violate § 28-901)). The offense must consist of some physical interference, force, violence, or obstacle.

Fahlk asserts that his failure to volunteer information cannot

be deemed to be a violation of § 28-901 because failure to volunteer information is not a physical act. Fahlk is not accused of failing to volunteer information. Fahlk is accused of creating a false computer checkout sheet and giving it to Becker on April 10, 1992. These actions surpass failing to volunteer information but lack the element of force or violence contemplated by § 28-901.

Secondly, Fahlk's actions did not constitute a breach of official duty. Section 28-901 is virtually identical to Model Penal Code § 242.1 (1980). The comments to Model Penal Code § 242.1 state that the kind of official misconduct contemplated by that statute is "a particularly dangerous and reprehensible kind of official misconduct—purposeful obstruction of governmental function by breach of official duty." *Id.*, comment 4 at 206. For example, a public official who sought to undermine the operation of the government he or she purports to serve would violate Model Penal Code § 242.1. The alleged creation of a false checkout sheet does not rise to the level of official misconduct contemplated by § 28-901.

Finally, one can also be guilty of the offense of obstructing government operations if one commits an unlawful act with the intent to obstruct, impair, or pervert the administration of law. The comments to Model Penal Code § 242.1 define an "unlawful act" to be "any affirmative violation of legal duty, whether imposed by criminal statute, tort law, or administrative regulation." *Id.*, comment 5 at 206. Had the State established that Fahlk created the checkout sheet with the intent to offer false physical evidence to Becker, the evidence might have supported a conviction of violation of Neb. Rev. Stat. § 28-922 (Reissue 1989) (tampering with physical evidence), the statute cited by the Court of Appeals in its opinion. See *State v. Fahlk*, 2 Neb. App. 421, 510 N.W.2d 97 (1993).

However, Fahlk was not charged with a violation of § 28-922 and that charge was not put before the jury. It was therefore error for the Court of Appeals to say Fahlk violated § 28-922, which would constitute a violation of § 28-901, which Fahlk was charged with violating.

The burden was on the State to prove all the essential elements of the crime of obstruction of government operations. As stated above, the State failed to establish that the alleged creation of a false checkout sheet was a physical act, breach of official duty, or an unlawful act. The evidence is not sufficient to support a conviction of the crime of obstruction of government operations.

## CONCLUSION

As to Fahlk's conviction of theft by unlawful taking, the district court committed harmless error in refusing to allow Fahlk's direct testimony regarding his alleged lack of intent to permanently deprive the school district of the computer printer. But the district court abused its discretion by excluding evidence that the school board may have impliedly consented to the taking. Further, the admission of improper rebuttal testimony that a caller identification device showed calls from Fahlk's home was prejudicial error. Therefore, Fahlk's conviction under § 28-511(1) of theft by unlawful taking is reversed, and Fahlk is entitled to a new trial on count I.

Secondly, as to Fahlk's conviction of obstruction of government operations, the evidence before us does not meet the requisite elements of § 28-901(1) and is insufficient to support Fahlk's conviction. Accordingly, Fahlk's conviction under § 28-901(1) is reversed, and the cause is remanded with directions to dismiss count II.

JUDGMENT ON COUNT I REVERSED AND REMANDED FOR A NEW TRIAL.

JUDGMENT ON COUNT II REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

WRIGHT, J., participating on briefs.