[793 NYS2d 384]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONNIE COVINGTON, Appellant.

First Department, April 21, 2005

**APPEARANCES OF COUNSEL**

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Lisa Lewis* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney,* New York City (*David M. Cohn* and *John A. Zadrozny* of counsel), for respondent.

**OPINION OF THE COURT**

NARDELLI, J.

In this appeal, we are called upon to determine whether defendant's actions, at the scene of a police narcotics raid, constitute the crime of obstructing governmental administration in the second degree (Penal Law § 195.05), or fall within the Court of Appeals holding in *People v Case* (42 NY2d 98, 102 [1977]), that words alone do not satisfy the requirements of the statute.

In the early afternoon of April 19, 2002, New York City Police Officers Jorge Burgos, Gladice Johnson, Darryl Lucas, Joseph Callahan and Sergeant Christopher McCormack were part of a team of approximately 20 officers, including members of the Police Department's Emergency Services Unit (ESU), which arrived at the building designated as 62 East 125th Street, New York, New York, to execute a search warrant at apartment 3E. The building was located between a variety store and a nail salon. Officers Burgos, Callahan and Lucas, as well as Sergeant McCormack, were in plainclothes, but wore their shields and jackets with "NYPD" patches and "NYPD" emblazoned on the back. Sergeant McCormack was assigned to enter the building and secure the target apartment's hallway, whereas Officer Callahan was assigned to enter the building with the ESU officers and direct them to the correct apartment. Officers Burgos and Lucas were to provide security at the front door of the building and Officer Johnson, who was in uniform, remained in a marked police van double-parked in front of the building.

Officer Burgos testified that when he arrived at his post in front of the building, he observed defendant approximately midway between the curb and the front doorstep of the building; and that the distance between the curb and doorstep was approximately 20 feet. Officer Burgos stated that as the other officers entered the building to execute the warrant, defendant cupped his hand around his mouth, in order to amplify his voice, and began yelling "the police are coming" toward the building. Defendant, at this time, was, according to Officer Burgos, approximately 5 to 10 feet away from him and was positioned between the officer and the building.

Officer Burgos testified that when he approached defendant and attempted to grab him, defendant tried to push the officer away and said "get the f—k off me, I didn't do nothing." Officer

Burgos and defendant then allegedly began to wrestle, and defendant was eventually handcuffed and arrested with the aid of approximately five other officers. The officers subsequently took defendant to the van, searched him, and recovered two sets of keys.

Officer Johnson testified that: she remained in the van as Officer Burgos proceeded to the main entrance; defendant arrived after Officer Burgos positioned himself directly in front of the building, and at first seemed to be having a discussion with Officer Burgos, although she could not hear what was being said; defendant and Officer Burgos suddenly began to wrestle, after which defendant was subdued and arrested with the assistance of other officers; and two sets of keys were recovered from defendant and placed in a manila envelope.

Officer Lucas stated that upon arriving at the front of the building in an "unmarked taxicab," he observed the ESU officers enter the building, followed by someone yelling "police" in a loud voice, and then by Officer Burgos struggling with defendant on the steps of the building. Officer Lucas further stated that defendant was arrested after several officers assisted Officer Burgos, subsequent to which defendant was walked over to the police van where keys were recovered from his person.

Officer Callahan testified that as he was running into the building behind the ESU officers, he observed defendant right in front of, and facing toward the building, "almost in front of the door." Officer Callahan asserted that defendant, in a voice directed at the building, which he characterized as "almost a yell," stated "yo, get out of the building, the police are coming in."

Sergeant McCormack testified that he preceded the ESU officers into the building, and that he heard a lot of screaming as he jumped out of the van. Sergeant McCormack, after leaving the apartment following ESU's forcible entry, returned to the police van where Officer Burgos gave him the keys recovered from defendant. Sergeant McCormack stated that he returned to the apartment and tested the keys in the apartment locks, and that one of the keys turned one lock, although the keys could not be tested against the second lock because it had been destroyed by ESU in gaining entry to the apartment.

The testimony of Officer Callahan, Sergeant McCormack and Oscar Osuala, a forensic chemist employed by the Police Department, as well as various exhibits, including photographs, entered into evidence, established that more than three pounds of

marijuana was recovered from the apartment in different locations, including a potent form of marijuana called "hydro"; that some of the marijuana was in bulk (brick) form and some was prepackaged in over 100 clear plastic bags; and that scales were also recovered which, based upon Officer Callahan's experience, were "used to weigh drugs."

The defense called two witnesses, Barbara Brundage, defendant's fiancée, and her sister, Earlanna Brundage, who testified that defendant met them on the day in question in Marcus Garvey Park on East 124th Street and Madison Avenue. As they walked toward the building so defendant could purchase phone card minutes for Barbara in a store adjacent thereto, Earlanna stopped at the corner to speak to a friend. Defendant and Barbara then allegedly left the store, and as Barbara walked slightly ahead of defendant, she observed a "SWAT" team entering the building. Defendant purportedly told her to get out of the way, but on cross-examination, she acknowledged that she was unaware of exactly what defendant said or which way he was facing when he spoke. Barbara maintained that when she turned around, the police had grabbed defendant and were wrestling him to the ground.

Defendant, by New York County Indictment No. 2472/02, was charged with criminal possession of marijuana in the second degree; criminal facilitation in the fourth degree; obstructing governmental administration in the second degree; resisting arrest; and hindering prosecution in the third degree. On January 29, 2003, the jury, after trial, convicted defendant of obstructing governmental administration in the second degree and resisting arrest, and acquitted him of the remaining counts. On March 4, 2003, the court sentenced defendant to concurrent terms of nine months' imprisonment.

Defendant now appeals, and claims that his conviction of obstructing governmental administration was based on legally insufficient evidence and was against the weight of the evidence. We find defendant's arguments unpersuasive and affirm his conviction.

The standard for appellate review of legal sufficiency issues is "whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People" (*People v Williams*, 84 NY2d 925, 926 [1994]; *accord People v Hines*, 97 NY2d 56, 62 [2001]; *People v Bierenbaum*, 301 AD2d 119, 131 [2002], *lv denied* 99

NY2d 626 [2003], *cert denied* 540 US 821 [2003]; *see also Jackson v Virginia*, 443 US 307, 319 [1979]; CPL 70.10 [1] [which defines legally sufficient evidence as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof"]).

In contrast, the Court of Appeals has recently reaffirmed that weight of the evidence review "recognizes that '[e]ven if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further'" (*People v Cahill*, 2 NY3d 14, 57-58 [2003], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]). Thus, "[i]f based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (*People v Bleakley, supra* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]), and decide whether the trier of fact has given the evidence the weight it should be accorded (*People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* — US —, 124 S Ct 2929 [2004]; *People v Carthrens*, 171 AD2d 387, 392 [1991]). Moreover, when performing a weight of the evidence de novo review, an intermediate appellate court, in effect, sits as a thirteenth juror (*People v Rayam*, 94 NY2d 557, 560 [2000]; *People v Freeman*, 298 AD2d 311, 312 [2002], *lv denied* 99 NY2d 582 [2003]), although great deference must still be accorded to the factfinder's opportunity to view the witnesses, hear the testimony and observe demeanor (*People v Mateo*, 2 NY3d at 410; *People v Bleakley*, 69 NY2d at 495). Indeed, when acting as a thirteenth juror, "there is no good reason why a court should resolve any inconsistency in favor of a defendant rather than the People . . ." (*People v Rayam, supra* at 562; *see also People v Freeman, supra* at 312).

Penal Law § 195.05 provides, in pertinent part, that:

> "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, *by means of intimidation, physical force or interference*, or by means of any independently unlawful act . . ." (emphasis added).

Defendant relies on *People v Case* (42 NY2d at 102) for the proposition that "words alone do not satisfy the requirements

of the statute." In *Case*, the Court of Appeals had before it a defendant motorist who broadcast a CB radio message to another motorist warning of the location of a radar speed checkpoint. As aptly noted by Judge Cooke, "[t]o say that there is a Smokey takin' pictures up the road does not subject the speaker to a year's imprisonment" (*id.* at 99). In reaching its holding, the Court opined that "mere words alone do not constitute 'physical force or interference,' " so as to trigger criminal liability under Penal Law § 195.05, but that "the interference would have to be, in part at least, physical in nature" (42 NY2d at 102). Chief Judge Breitel, in a concurring opinion in which Judges Jasen and Jones joined, wrote, with a degree of foresight, that:

> "limiting interference to physical acts leaves outside the scope of obstructing governmental administration the many nonphysical forms of effective interference, thus, the 'tip-off' to believed-to-be would-be muggers that the seemingly old and ailing man in civilian clothes is in reality an undercover police officer." (*Id.* at 103.)

In view of the foregoing fact pattern, we find the relationship between *Case* and the matter at bar to be, at best, strained, and find that the more recent Court of Appeals decision in *Matter of Davan L.* (91 NY2d 88 [1997]), a decision which distinguished *Case*, to be instructive. In *Davan L.*, the New York City Police Department was conducting an undercover narcotics "buy operation" at a storefront in Jamaica, Queens, when a police officer observed the then 15-year-old juvenile defendant slowly and repeatedly circling the block on his bicycle. A second officer approached the defendant, identified himself, displayed his badge, and told the defendant not to get involved and to depart in the opposite direction. The juvenile, nevertheless, turned his bicycle around, pedaled into the identified zone, and yelled "cops, cops . . . watch out, Five-O, police are coming." (*Id.* at 90.)

The youth was arrested, charged with obstructing governmental administration, and was adjudicated a juvenile delinquent by Family Court. The Appellate Division reversed and dismissed the proceeding, and the Court of Appeals reversed, agreeing with the Family Court that "the juvenile's interrelated conduct—actions coupled with words—fits within the . . . specifications of Penal Law § 195.05" (*Davan L.*, 91 NY2d at 92).

The Court in *Davan L.*, in distinguishing *Case*, noted that in *Case*, "[t]he alleged interference with the police activity was at-

tenuated by distance, time and technology," whereas, in the matter before it, "[t]he police activity area was confined and defined, and the juvenile was put on specific, direct notice. *There was evidence that he intentionally intruded himself into the specific area of police activity and directed his warnings toward a known criminal activity*" (*id.* at 91 [emphasis added]). The Court, in reaching its determination, pointedly noted that "[t]he Legislature intended and enacted that criminal responsibility should attach to minimal interference set in motion to frustrate police activity" (*id.*). In fact, it has been held, on more than one occasion, that the actual use of physical force is unnecessary to uphold a conviction under Penal Law § 195.05 (*see People v Romeo*, 9 AD3d 744, 745 [2004] [interference sufficient to establish the crime of obstructing governmental administration in the second degree includes inappropriate and disruptive conduct at the scene of the performance of an official function, " '*even if there is no physical force involved*' " (emphasis added)], quoting *Willinger v City of New Rochelle*, 212 AD2d 526, 527 [1995]; *accord Matter of Joshua C.*, 289 AD2d 1095 [2001]).

While, in the matter at bar, no specific warning was directed by the police to defendant, we find that the holding of the Court of Appeals in *Davan L.* does not create a bright-line rule which would preclude criminal liability under Penal Law § 195.05 for lack of such notice. Indeed, defendant herein interjected himself into an obvious, defined area of police activity; it must be remembered that even his fiancée testified as to the presence of a "SWAT" team. Defendant then directed his warnings from immediately in front of the building, one officer's testimony placed him on the steps of the building, toward an area of known criminal activity, i.e., the targeted apartment, which faced the street, facts defendant was obviously aware of as he possessed at least one key to the premises. Clearly, defendant's actions were designed to frustrate and obstruct the police officers' efforts and, had the apartment been occupied, may very well have compromised the officers' safety, as well as their operation. As a result, we find that the evidence in this matter was legally sufficient to support defendant's conviction, and that the verdict was not against the weight of the evidence.

Accordingly, the judgment of the Supreme Court, New York County (Bernard Fried, J.), rendered March 4, 2003, convicting defendant, after a jury trial, of obstructing governmental administration in the second degree and resisting arrest, and sentencing him to concurrent terms of nine months, should be affirmed.

MAZZARELLI, J.P., MARLOW, ELLERIN and CATTERSON, JJ., concur.

Judgment, Supreme Court, New York County, rendered March 4, 2003, affirmed.