755 N.W.2d 596 (2008)
276 Neb. 548
STATE of Nebraska, Appellee,
v.
Steve STOLEN, Appellant.
No. S-06-1216.
Supreme Court of Nebraska.
September 12, 2008.
*598 Robert B. Deck, Sioux City, IA, for appellant.
Jon Bruning, Attorney General, and Erin E. Leuenberger, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
The State charged Steve Stolen with obstructing government operations under Neb.Rev.Stat. § 28-901(1) (Reissue 1995), a Class I misdemeanor.[1] Stolen and other campers had cleaned up empty beer cans and trash before officers arrived to investigate the accidental drowning death of one of the campers. The deceased camper was a minor. The evidence showed that minors in the group, including the camper who drowned, had consumed alcoholic beverages during the night. The Nebraska Court of Appeals affirmed Stolen's conviction.[2] We granted Stolen's petition for further review. The issue is whether Stolen obstructed government operations by helping to discard empty beer cans and other trash that might have indicated the campers had consumed alcohol.
We reverse and remand with directions to vacate Stolen's conviction and sentence. We conclude that to commit obstruction of government operations, a person must affirmatively interfere with a public servant's active performance of a duty. Here, the officers had not begun an investigation. And the evidence fails to show that Stolen affirmatively interfered with the active performance of a duty. Nor does the evidence show that the campers' disposal of beer cans and trash impaired or obstructed the investigation into the cause of the minor's death.

BACKGROUND
On July 3, 2005, Stolen was camping with about 12 people on private property owned by Bradley Jochum. Jochum was also camping on the property with about 20 to 25 people. The property abutted the Missouri River in Dakota County. Stolen and his friend, Kingsley James, had planned an Independence Day party for Stolen's son and his son's Army National Guard friends before they left for Iraq. James brought his son and his son's friend, who were both minors. James' son's *599 friend then invited Ken Willis, Jr., the camper who later died; Willis was also a minor. Three people in Stolen's group were minors. Stolen's group partied with Jochum's group during the night. Their activities included shooting fireworks, playing volleyball, and arm wrestling. People in both groups had brought alcoholic beverages, and the record shows that the minors in Stolen's group consumed alcohol.
Stolen went to sleep about 2 a.m. Around 2:30 a.m., James' son and his son's friend informed James that Willis was missing. After searching for about an hour, the campers concluded that Willis must have left on foot or left with someone, and they returned to their tents. Around 6 a.m., while taking a walk, James found Willis' body partially in the river and woke Stolen.
The record contains conflicting testimony from Stolen, James, and Jochum regarding who suggested that the campers clean up empty beer cans and trash before law enforcement officers arrived. Their testimony also conflicted whether the campers cleaned up part of the mess before waking Jochum and asking him to call the 911 emergency dispatch service. But viewing the evidence in the light most favorable to the State, the evidence supports a finding that the campers, including Stolen, picked up beer cans and trash before officers arrived, because they were concerned about the appearance of alcohol consumption when minors were present. The State did not present any testimony that the campers cleaned the campsite to deflect an investigation into the cause of Willis' death. Stolen admitted to helping with the cleanup. James testified that the campers put some empty beer cans in Stolen's son's boat; he stated that five campers then left in that boat. Jochum testified that four campers stayed: James, Stolen, James' son, and his son's friend. Stolen testified that the campers put three to four bags of garbage in a pickup belonging to someone in Jochum's group.
Jared Junge, a deputy sheriff for Dakota County, arrived at the campsite 10 to 15 minutes later, about 6:30 a.m. Junge described the campsite as clean. He testified that the campers, including the minors, appeared to have been drinking during the night. Some were still under the influence of alcohol. He saw about six beer cans and said that he generally saw more trash and beer cans at campsites when the campers are hung over or intoxicated. And he normally looks for alcohol containers at a campsite when there is evidence of alcohol consumption. He said that his investigation is hampered if someone has removed the physical evidence. Junge testified that the removal of physical evidence from the scene could distort the picture of what happened and possibly result in the loss of forensic evidence.
Junge testified that his investigation was hampered because the campers had removed all but about six beer cans. But he admitted that during his investigation, he did not attempt to collect any beer cans. Nor was he aware that any other officer attempted to collect physical evidence other than to retrieve Willis' body. He limited his investigation to collecting contact information from the campers so that he could interview them later. No evidence suggests that the campers responded untruthfully to questioning about the minors' alcohol consumption. Nor did they attempt to physically interfere with the officers' active investigation at the campsite.
An autopsy showed Willis had consumed alcohol before his death. The parties stipulated that his blood alcohol level was 157 milligrams per deciliter of blood. The investigators determined Willis' death was accidental.
*600 The State charged Stolen with one count of obstructing government operations under § 28-901 and one count of procuring alcohol for a minor. A jury found him guilty of obstruction and not guilty of procuring alcohol. The court placed him on probation for 18 months and ordered him to complete 90 hours of community service and write letters of apology to Willis' family and law enforcement.
Stolen appealed to the district court, which affirmed. He then appealed to the Court of Appeals. He assigned that (1) there was no physical act that supported an obstruction conviction and (2) the evidence on an underlying unlawful act was insufficient to support an obstruction conviction.
The Court of Appeals held that the circumstantial evidence, when viewed in the light most favorable to the State, was sufficient for a jury to infer that Stolen had committed a physical act "intended to" interfere with an investigation into Willis' death, "which investigation Stolen knew was about to occur."[3] It held that Stolen committed "physical interference" under § 28-901(1) when he cleaned the campsite and removed alcohol containers. It dismissed Stolen's reliance on this court's decision in State v. Fahlk.[4]

ASSIGNMENT OF ERROR
Stolen assigns, restated and condensed, that the Court of Appeals incorrectly held that Fahlk was not controlling under these facts.

STANDARD OF REVIEW
[1-3] The interpretation and meaning of a prior opinion presents a question of law.[5] Statutory interpretation presents a question of law.[6] When reviewing questions of law, we resolve the questions independently of the lower court's conclusions.[7]

ANALYSIS
[4] Section 28-901(1) provides:
A person commits the offense of obstructing government operations if he intentionally obstructs, impairs, or perverts the administration of law or other governmental functions by [1] force, violence, physical interference or obstacle, [2] breach of official duty, or [3] any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.
Section 28-901 tracks § 242.1 of the Model Penal Code.[8] As indicated by the numbered brackets we have placed in the quoted statute, we concluded in Fahlk that § 28-901 comprises three separate means of committing obstruction of government operations. We further concluded that the "physical act" component "must consist of *601 some physical interference, force, violence, or obstacle."[9]
Stolen contends that under our decision in Fahlk, his conduct was not a crime. He argues that the Court of Appeals effectively overruled Fahlk and failed to recognize that it was controlling under these facts.

FAHLK INCORRECTLY REQUIRED FORCE OR VIOLENCE IN ALL CIRCUMSTANCES INVOLVING OBSTRUCTION OF GOVERNMENT OPERATIONS BY PHYSICAL ACT
In Fahlk, the defendant was a high school superintendent. A jury convicted him of obstructing government operations because he supplied an investigator with a falsified checkout sheet for supplies from a school. The checkout sheet purported to show that he had informed school officials when he "checked out" a computer printer. On appeal, the Court of Appeals held that the evidence was sufficient to support his conviction under the third component of § 28-901, which prohibits obstruction through any other unlawful act. Citing Neb.Rev.Stat. § 28-922 (Reissue 1995) (tampering with evidence), the Court of Appeals concluded that a jury could have found beyond a reasonable doubt that the defendant presented false evidence to the investigator "when [the defendant] realized that an official proceeding was about to be instituted."[10]
This court reversed the judgment of the Court of Appeals. We concluded that the evidence was insufficient under any component of § 28-901. Regarding the physical act component, we stated that the defendant's "actions surpass failing to volunteer information but lack the element of force or violence contemplated by § 28-901."[11]
In Fahlk, we also rejected the Court of Appeals' reliance on the "other unlawful act" component of § 28-901. We recognized that the evidence might have supported a conviction for tampering with evidence under § 28-922. But we concluded that the Court of Appeals erred when it relied on a violation of § 28-922 because the State had not charged that offense and it was not an issue before the jury.
[5] In this case, the Court of Appeals distinguished Fahlk. It concluded that Fahlk had not provided guidance on the force or violence necessary to constitute physical interference. It further stated that Fahlk did not "address the `physical interference' or `obstacle' component of the statute."[12] Although we disagree with the Court of Appeals' interpretation of Fahlk, upon reexamination of the decision, we conclude that we were wrong. We determine that Fahlk incorrectly requires force or violence in all circumstances alleging obstruction of government operations under the physical act component of § 28-901.
[6-8] In our reexamination of Fahlk, we conclude that we failed to focus on the statutory language of § 28-901. The physical act component of § 28-901 consists of disjunctive, or independent, elements: "force, violence, physical interference or obstacle." In construing statutory language, we attempt to give effect to all parts of a statute and avoid rejecting as superfluous or meaningless any word, *602 clause, or sentence.[13] Although the use of "and" and "or" can be interchangeable,[14] here, the Legislature had no reason to include "physical interference" as a means of committing obstruction if it intended to equate "physical interference" to the physical acts of using "force" or "violence." Thus, a disjunctive reading of the elements is consistent with the plain meaning of the statute. It is also consistent with comments to the Model Penal Code and the way other courts have interpreted similar statutes.
For example, under a similar statute,[15] New York courts have held that physical force was not required when the defendant physically interjected himself into ongoing undercover police operations to purposefully disrupt the operation or warned others involved in criminal activity of the officers' presence.[16] Similarly, courts have concluded that physical interference does not require the use of force or violence when the defendants committed the following acts: (1) Defendants surrounded an officer attempting to arrest a person and allowed that person to flee custody and escape[17]; (2) defendants entered an abortion clinic and chained themselves together with bicycle locks so that police could not transfer them to a jail until a locksmith removed the locks[18]; (3) defendant refused to remove a crutch wedging a door closed so that officers could serve eviction papers[19]; or (4) defendant placed a tractor and dump truck in front of a mobile home to prevent officers from executing a replevin order to take possession.[20] Although the inquiries are fact-specific, these cases mirror the intent of § 28-901 as reflected in the comments to Model Penal Code § 242.1. Those comments show that the offense was intended as a gap-filler, to broadly cover conduct that could not be adequately anticipated by more specific offenses against public administration.[21]
Therefore, we overrule Fahlk to the extent it holds that in every circumstance in which the State charges obstruction by a physical act, the evidence must show force or violence. Our concern in Fahlk about the potential breadth of this statute had been expressed by other courts.[22] But we conclude that this concern is better addressed by focusing on the statute's requirement of affirmative interference.

SECTION 28-901 REQUIRES AFFIRMATIVE INTERFERENCE
Section 28-901 specifically limits its reach by excluding any "means of avoiding *603 compliance with law without affirmative interference with governmental functions." Thus, courts have held that the state must allege physical interference with a public servant's active performance of an authorized duty.
For example, an allegation that a defendant publicly announced an undercover officer's identity as an officer was insufficient to support an obstruction charge. There, the charging instrument failed to allege the specific duty the officer was engaged in that the defendant's conduct allegedly interfered with.[23] Likewise, an allegation that the defendant discarded or destroyed contraband when he saw an officer approaching him is insufficient to support an obstruction charge; the officer must be actively engaged in attempting to retrieve the contraband.[24] Even under the common law and statutes preceding the Model Penal Code, it was "essential that the obstruction be offered with respect to an official or public duty which the officer is attempting to perform."[25]
[9] We are persuaded by the reasoning of New York courts that have rejected obstruction charges when the charging instrument fails to allege affirmative interference with an active duty. "`[T]he mens rea of this crime is an intent to frustrate a public servant in the performance of a specific function.'"[26] Thus, a defendant may not be convicted of obstructing government operations by a physical act unless the public servant was engaged in a specific authorized act at the time of the physical interference.[27] Every element of § 28-901's physical act component supports the conclusion that the statute was intended to reach only affirmative interference with a public servant's active performance of a duty.
[10] Here, officers were called to the scene to investigate the cause of Willis' death  not whether Stolen had procured alcohol for minors. The State argues that "Stolen's act of picking up the beach was a physical interference and obstacle that obstructed law enforcement's investigation into Willis' death."[28] But accepting this argument would leave § 28-901 without boundaries. No officers were engaged in investigating Willis' death when the campers cleaned up the campsite. Nor did the State allege or argue that Stolen or the other campers physically interfered with the officers' active investigation after they arrived at the campsite. In addition, the State has failed to show how Stolen's conduct obstructed, impaired, or perverted their investigation into the cause of Willis' death.
The State did not contend that during the investigation, Stolen lied to investigators about minors consuming alcohol. Junge knew that minors at the campsite had been drinking or were under the influence. And he did not testify that anyone had lied to him about this fact. Nor has the State shown that discarding beer cans deflected or interfered with the investigation into the cause of Willis' death. Junge admitted that he was unaware of any attempt *604 by investigators to retrieve or discover physical evidence showing that the campers had consumed alcohol. The investigators' determination that Willis had consumed alcohol before his death was based on the medical examiner's report, not the presence of beer cans at the campsite.
Unless a defendant's physical interference is firmly tethered to an officer's active performance of a duty, an obstruction charge could potentially be linked to any preinvestigation conduct regarding any offense that the officer uncovers during an investigation. Here, for example, the complaint failed to allege the government operation with which Stolen's conduct allegedly interfered. The court instructed the jury that it must find Stolen intentionally obstructed government operations. But here the jury could have concluded that his intent to obstruct was tied to the offense of procuring alcohol for minors  not the officers' investigation of Willis' death.
[11] We do not consider here whether these facts support a conviction for tampering with evidence under § 28-922; the State did not charge that offense. As we recognized in Fahlk, these are separate offenses covering different conduct. The comments to Model Penal Code § 242.1 state that this section is intended as a supplement to other crimes proscribing interference with government operations, e.g., bribery, perjury, tampering, and falsification.[29] The American Law Institute's comments to § 242.1 similarly clarify that the other unlawful act component of § 28-901 must be shown by an act that is unlawful independent of a purpose to obstruct government operations.[30]

CONCLUSION
We conclude that because the evidence failed to show that Stolen committed a physical act that interfered with an officer's active performance of a duty, it was insufficient to support his conviction for obstruction of government operations under § 28-901. We therefore reverse the decisions of the Court of Appeals and the district court, which affirmed the county court's decision. We remand the cause with directions to the Court of Appeals to remand the cause to the district court with directions to vacate Stolen's conviction and sentence and to remand the cause to the county court for dismissal.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] See § 28-901(2).
[2] State v. Stolen, 16 Neb.App. 121, 741 N.W.2d 168 (2007).
[3] Stolen, supra note 2, 16 Neb.App. at 126, 741 N.W.2d at 172.
[4] State v. Fahlk, 246 Neb. 834, 524 N.W.2d 39 (1994).
[5] See, Pennfield Oil Co. v. Winstrom, 276 Neb. 123, 752 N.W.2d 588 (2008); Kerndt v. Ronan, 236 Neb. 26, 458 N.W.2d 466 (1990), citing Neujahr v. Neujahr, 223 Neb. 722, 393 N.W.2d 47 (1986).
[6] State v. Epting, 276 Neb. 37, 751 N.W.2d 166 (2008).
[7] State v. Draganescu, 276 Neb. 448, 755 N.W.2d 57 (2008).
[8] See Model Penal Code § 242.1, 10A U.L.A. 638 (2001).
[9] See Fahlk, supra note 4, 246 Neb. at 853, 524 N.W.2d at 53.
[10] See State v. Fahlk, 2 Neb.App. 421, 436, 510 N.W.2d 97, 106 (1993).
[11] Fahlk, supra note 4, 246 Neb. at 854, 524 N.W.2d at 53 (emphasis supplied). See, also, Nebraska Legislature on behalf of State v. Hergert, 271 Neb. 976, 720 N.W.2d 372 (2006) (clarifying that holding in Fahlk was limited to physical act component).
[12] Stolen, supra note 2, 16 Neb.App. at 125, 741 N.W.2d at 172.
[13] State v. Bossow, 274 Neb. 836, 744 N.W.2d 43 (2008).
[14] See State v. Wester, 269 Neb. 295, 691 N.W.2d 536 (2005).
[15] See N.Y. Penal Law § 195.05 (McKinney 1999).
[16] See, Matter of Davan L., 91 N.Y.2d 88, 689 N.E.2d 909, 666 N.Y.S.2d 1015 (1997); People v. Covington, 18 A.D.3d 65, 793 N.Y.S.2d 384 (2005); People v. Dolan, 172 A.D.2d 68, 576 N.Y.S.2d 901 (1991).
[17] See People v. Shea, 68 Misc.2d 271, 326 N.Y.S.2d 70 (1971).
[18] See State v. Purdy, 491 N.W.2d 402 (N.D. 1992).
[19] See State v. Mattila, 77 Or.App. 219, 712 P.2d 832 (1986).
[20] See State v. Holloway, 992 S.W.2d 886 (Mo.App.1999).
[21] See, Model Penal Code, supra note 8; A.L.I., Model Penal Code and Commentaries § 242.1, comment 2 (1980). See, also, People v. Case, 42 N.Y.2d 98, 365 N.E.2d 872, 396 N.Y.S.2d 841 (1977).
[22] See. Case, supra note 21; People v. Joseph, 156 Misc.2d 192, 592 N.Y.S.2d 238 (1992); People v. Simon, 145 Misc.2d 518, 547 N.Y.S.2d 199 (1989).
[23] People v. Hinkson, 184 Misc.2d 496, 708 N.Y.S.2d 546 (2000).
[24] People v. Vargas, 179 Misc.2d 236, 684 N.Y.S.2d 848 (1998); People v. Ravizee, 146 Misc.2d 679, 552 N.Y.S.2d 503 (1990); Simon, supra note 22.
[25] 4 Charles E. Torcia, Wharton's Criminal Law § 567 at 268 (15th ed. 1996).
[26] Vargas, supra note 24, 179 Misc.2d at 238, 684 N.Y.S.2d at 850 (emphasis omitted).
[27] People v. Lupinacci, 191 A.D.2d 589, 595 N.Y.S.2d 76 (1993); Vargas, supra note 24; Joseph, supra note 22.
[28] Brief for appellee at 11.
[29] See Model Penal Code, supra note 8.
[30] See Model Penal Code and Commentaries, supra note 21.