Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/21/2017 08:11 AM CDT

State of Nebraska, appellee, v.
Eddie H. Dehning, appellant.
___ N.W.2d ___

Filed April 27, 2017.    No. S-16-761.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Sentences.** When imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. However, the sentencing court is not limited to any mathematically applied set of factors.

5. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Deuel County: DEREK C. WEIMER, Judge. Affirmed.

Steven E. Elmshaeuser for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Eddie H. Dehning, the appellant, was charged with exploitation of a vulnerable adult and theft by unlawful taking. After a trial, the jury found Dehning guilty on both counts. The district court sentenced Dehning to imprisonment of 60 to 60 months for the conviction of exploitation of a vulnerable adult and imprisonment of 5 to 10 years for the theft conviction, with the sentences to run consecutively. The sentences were also ordered to be served consecutively to Dehning's sentences resulting from a separate criminal case. Dehning appeals. We affirm.

## STATEMENT OF FACTS

On April 2, 2015, Dehning was charged by information with two counts: Count I was exploitation of a vulnerable adult, a Class IIIA felony, and count II was theft by unlawful taking, a Class III felony. The information alleged that from approximately January 1, 2011, to December 31, 2013, Dehning had exploited a vulnerable adult, specifically his mother, Cora Bell Dehning (Cora Bell), and that he had stolen property from Cora Bell having an aggregate value of more than $1,500.

Dehning pled not guilty to the charges, and a jury trial was held on April 25 and 26, 2016. The State called 10 witnesses, including bank employees, members of Dehning and Cora Bell's family, a physician's assistant, the former

sheriff who investigated the case, and Julie Collins, Dehning's ex-girlfriend. Dehning testified in his own behalf.

The evidence adduced at trial generally showed that Cora Bell and her husband had two children: Dehning and his sister. After Cora Bell's husband retired in the early to mid-1980's, they moved to Sidney, Nebraska. Cora Bell's husband died in 1988, and after his death, Cora Bell continued to live independently in Sidney.

Dehning became Cora Bell's power of attorney in February 2011. In June 2011, Cora Bell moved from Sidney to Big Springs, Nebraska, which was closer to where Dehning lived. After Cora Bell was found at her home unconscious in December 2012, she was moved to an assisted living facility in February 2013. Later in 2013, Cora Bell was facing eviction from the assisted living facility, and in November 2013, Marvin Remington, Cora Bell's younger brother, and James Fraker, Cora Bell's nephew, became Cora Bell's powers of attorney.

Many of the witnesses testified regarding the mental state of Cora Bell. Remington testified that in 2007, Cora Bell "started having a little bit of [a] mind problem like she wasn't really thinking clearly like she always did before." He testified that in 2009, he noticed that Cora Bell would mix up her medications or forget to take them. James Fraker testified that in 2009 or 2010, he started to notice that Cora Bell was displaying signs of dementia. James Fraker stated that Cora Bell was repeating herself frequently and that by 2011, she was becoming forgetful and having a hard time carrying on a normal conversation. The former sheriff of Deuel County testified that he was informed by Dehning; James Fraker; and James Fraker's wife, Paula Fraker, that Cora Bell was suffering from dementia.

Collins also testified regarding Cora Bell's mental state. Collins testified that Cora Bell moved from Sidney to Big Springs so Dehning and Collins could check on her more easily. Collins stated that she would go to Cora Bell's house

frequently to make sure Cora Bell took her medication. Collins testified that she was concerned about Cora Bell's eating habits because she was losing a lot of weight and that she noticed "a decrease of her personal hygiene." Collins further stated that starting in 2011, Cora Bell would forget the names of Collins' children.

A physician's assistant, Lisa Regier, testified that she had treated Cora Bell from October 2011 through June 2012. In October 2011, after Regier learned that Cora Bell would sometimes forget to take her medication, Regier ordered an MRI. On November 21, after receiving the results of the MRI, Regier informed Cora Bell that she had what appeared to be Alzheimer's disease. Regier gave Cora Bell a "Mini-Mental Status Exam" on December 23, and based on the results of that examination, Regier determined that Cora Bell had mild or moderate Alzheimer's disease. Regier prescribed two medications to Cora Bell to slow the progression of the disease. On June 1, 2012, Regier met with Cora Bell again, and Regier testified that at that point, "it was obvious that the Alzheimer's disease was [a]ffecting [Cora Bell's] memory" and that it was "difficult for her to manage independently at that time." Regier testified that although June 1 was the first time she really noted that it was difficult for Cora Bell to function independently, she had concerns about Cora Bell's ability to care for herself beginning in November 2011.

With respect to Cora Bell's financial situation, the evidence adduced at trial showed that in 2013, other members of Cora Bell's family became aware that she was facing eviction from her assisted living facility, and as a result, they became involved in Cora Bell's financial affairs. As noted above, in November 2013, Remington and James Fraker became Cora Bell's powers of attorney. At trial, the State offered and the court received the bank records for two of Cora Bell's accounts and two of Dehning's accounts.

After Remington and James Fraker became Cora Bell's powers of attorney, they began examining Cora Bell's bank

records for the time that Dehning had been her power of attorney. Remington testified that in examining the bank records, he noticed a debit card was frequently used, but that Cora Bell "hardly ever used a debit card." Remington further stated that Dehning had

> opened a bank account at [a bank] in Big Springs for her and he was always transferring money around but he might take $2,500 out of [a] bank in Sidney . . . and he'd move it to Big Springs but when he put the money in the bank in Big Springs it would be usually [$]2,000 deposited and [$]500 missing.

Remington further testified that Dehning had rented out Cora Bell's house located in Sidney but that very little of the rent money was deposited into Cora Bell's bank accounts.

James Fraker testified that after becoming power of attorney along with Remington, they both noticed that Cora Bell had very little money in her bank accounts. James Fraker testified that after further investigation, "it was kind of evident that [Dehning] had been taking some of [Cora Bell's] money and spending it." Similar to Remington's testimony, James Fraker testified that Dehning would transfer money between Cora Bell's bank account in Sidney and her account in Big Springs and that

> during the transfer he would take cash out, like I say if he took $1,500 out of [the] bank in Sidney and transfer [sic] it over to the bank in Big Springs maybe [$]1,200 or $1,100 would show up and the rest would be taken out. You could see on the deposit slip there would always be a deduction out for cash.

James Fraker further testified that Cora Bell's debit card was used and automated teller machine withdrawals occurred in areas of Nebraska to which Cora Bell would not have traveled.

Paula Fraker testified that she examined Cora Bell's bank accounts along with Remington and James Fraker. She testified that she prepared spreadsheets regarding Cora Bell's

finances to show the investigators involved in this case. Paula Fraker testified that in examining Cora Bell's bank accounts, she made the following observations: Dehning would pay his utility bill from Cora Bell's account, the first time there was use of a debit card from Cora Bell's account was after Dehning became power of attorney, there was an instance when $1,500 went missing from Cora Bell's bank accounts, the $700 monthly rent check for Cora Bell's house in Sidney was being deposited into Dehning's account, and many other transactions that Paula Fraker found suspicious, including a check made out to the "Keith Co. Treasurer" for $609.12 when Cora Bell did not own any property in Keith County, Nebraska.

Numerous voluminous bank records from two of Cora Bell's accounts and two of Dehning's accounts were received in evidence. These formed part of the basis on which the State relied to prove the amount of the theft alleged in count II.

Collins also testified regarding Cora Bell's finances. She stated that after receiving the rent for Cora Bell's house in Sidney, Dehning would deposit the money into his bank account. Collins further testified that Dehning once purchased a shed to be used at his house and that he paid for it with a check drawn on Cora Bell's bank account. Collins also testified that Dehning purchased many guns and electronics in 2012 and 2013.

After the State concluded the presentation of its case in chief, Dehning moved for a "directed verdict." The district court overruled Dehning's motion.

Dehning testified in his own behalf. Dehning generally testified that he had Cora Bell's permission and consent for all of the financial transactions that were being questioned. He testified: "I had permission to do anything I wanted to do." Dehning also testified that Cora Bell was present with him for many of the automated teller machine withdrawals that were at issue.

As a specific example of Cora Bell's permission and to rebut Collins' testimony, Dehning testified that he had Cora

Bell's permission to install the shed that he used at his house. In this regard, Dehning testified that Cora Bell initially stated she wanted a shed to store equipment that would not fit in her garage, so he ordered a shed. Dehning stated on direct testimony that after he explained to Cora Bell that a spruce tree, an oak tree, and a fence would need to be removed to install the shed, Cora Bell said to Dehning, "you're not cutting up those trees for a storage shed. And I already ordered the storage she[d]. . . . Well, take it to your house because it's not coming here if we've got to tear the hell out of everything."

Regarding his defense that he had Cora Bell's consent, Dehning testified that Cora Bell had specifically told him that "any of her money was [Dehning's] money." He also testified that Cora Bell did not have a good relationship with her daughter, and Dehning stated that Cora Bell told him: "[Y]ou don't be leaving money in the bank, you keep that money moving so your sister don't get it. It's your money."

After the trial concluded, the jury returned a verdict of guilty on both counts, with the theft valued at $32,447.28.

A sentencing hearing was held on July 11, 2016. The district court sentenced Dehning to imprisonment of 60 to 60 months for the conviction of exploitation of a vulnerable adult and to imprisonment of 5 to 10 years for the theft conviction, with the sentences to run consecutively. The sentences were also ordered to be served consecutively to Dehning's previous sentences resulting from a separate criminal case in Keith County. Dehning was not given credit for time served, because he was in prison on the separate previous criminal case.

Dehning appeals.

## ASSIGNMENTS OF ERROR

Dehning claims that his convictions should be reversed because there was insufficient evidence to prove he was guilty beyond a reasonable doubt and the district court erred by imposing excessive sentences.

## STANDARDS OF REVIEW

[1] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCurry, ante* p. 40, 891 N.W.2d 663 (2017).

[2,3] We will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*The Evidence Was Sufficient:*
*Exploitation of a*
*Vulnerable Adult.*

Dehning contends that the evidence failed to show that Cora Bell was a "vulnerable adult" and that therefore, his conviction of count I, exploitation of a vulnerable adult, should be vacated. We do not agree.

Dehning was convicted under Neb. Rev. Stat. § 28-386 (Cum. Supp. 2012), which states in subsection (1):

A person commits knowing and intentional abuse, neglect, or exploitation of a vulnerable adult or senior adult if he or she through a knowing and intentional act causes or permits a vulnerable adult or senior adult to be:

(a) Physically injured;

(b) Unreasonably confined;

(c) Sexually abused;

(d) Exploited;

(e) Cruelly punished;

(f) Neglected; or

(g) Sexually exploited.

Neb. Rev. Stat. § 28-371 (Reissue 2008) defines a "[v]ulnerable adult" as "any person eighteen years of age or older who has a substantial mental or functional impairment or for whom a guardian or conservator has been appointed under the Nebraska Probate Code." "Substantial mental impairment" is defined as "a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, or ability to live independently or provide self-care as revealed by observation, diagnosis, investigation, or evaluation." Neb. Rev. Stat. § 28-369 (Reissue 2016).

Dehning focuses on the timeframe alleged in the information, January 1, 2011, to December 31, 2013. He essentially asserts that because Cora Bell lived independently until December 2012, she was not vulnerable for at least some of the time period charged.

In an appeal of a criminal conviction, we review the evidence in a light most favorable to the prosecution. See *State v. McCurry, supra*. There was testimonial evidence that Cora Bell had "mind problem[s]" and difficulty taking medication in 2007, that she suffered from confusion in 2009, and that Dehning was made Cora Bell's power of attorney in February 2011 because of her impairment. Regier diagnosed Cora Bell with Alzheimer's disease in December 2011.

Taken together, the evidence shows that Cora Bell was not merely experiencing undifferentiated aging. See *State v. Rakosnik*, 22 Neb. App. 194, 849 N.W.2d 538 (2014) (affirming convictions where evidence established elements of exploitation of vulnerable adult). Compare *State v. Stubbs*, 252 Neb. 420, 562 N.W.2d 547 (1997) (reversing conviction where evidence showed natural aging). Consistent with § 28-369 quoted above, proof that an individual suffers "[s]ubstantial

mental impairment" can consist of observations of the adult's behavior, and we do not read the statute to require expert opinion. In this case, numerous witnesses testified as to their observations of Cora Bell's mental impairment. A rational trier of fact could have found beyond a reasonable doubt that Cora Bell's condition met the criteria of "vulnerable adult" under the statute, and thus, the elements of the crime during the period alleged were established. See *State v. McCurry, ante* p. 40, 891 N.W.2d 663 (2017). We reject Dehning's assignment of error.

*The Evidence Was Sufficient:*
*Theft by Unlawful Taking.*

Dehning contends that because he testified that Cora Bell gave him consent for the challenged transactions, the prosecution failed to establish the elements of the crime of theft by unlawful taking beyond a reasonable doubt. Dehning's argument rests on our acceptance that Dehning's testimony was credible, but this argument contradicts our standard of review. In reviewing a sufficiency of the evidence claim, we do not pass on the credibility of witnesses—that is for the trier of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCurry, supra*. We reject Dehning's argument.

Dehning was convicted of count II, violating Neb. Rev. Stat. § 28-511(2) (Reissue 2016), which states: "A person is guilty of theft if he or she transfers immovable property of another or any interest therein with the intent to benefit himself or herself or another not entitled thereto." The theory of Dehning's defense and his argument on appeal are that because he offered evidence as quoted above in our "Statement of Facts" to the effect that Cora Bell had given him consent to use her property, he did not have the requisite intent to benefit himself without entitlement.

This court has stated that consent is a valid defense to theft by taking under the related subsection, § 28-511(1), regarding movable property, and we logically recognize consent as a defense under § 28-511(2) at issue in this case. See *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994), *overruled on other grounds, State v. Stolen*, 276 Neb. 548, 755 N.W.2d 596 (2008). However, although Dehning claimed in his testimony that Cora Bell consented to the challenged transctions, the jury as trier of fact was free to find Dehning's testimony incredible and reject Dehning's defense where the prosecution by its evidence carried its burden of proving the elements of theft by unlawful taking under § 28-511(2) beyond a reasonable doubt. The record demonstrates that the prosecution met its burden.

As recited in our "Statement of Facts," not repeated here, there was legally sufficient evidence to support this conviction. Such evidence included that the rental income from Cora Bell's house in Sidney was rarely deposited to her accounts, Dehning made transfers between accounts but withdrew cash in the exchange, and Dehning used Cora Bell's money to buy items for his benefit, including guns and computers. The trier of fact could reasonably conclude that such takings were done with intent to benefit Dehning without Cora Bell's consent. And a defendant can be guilty of theft by unlawful taking, even if the defendant holds power of attorney. See *State v. Rakosnik*, 22 Neb. App. 194, 849 N.W.2d 538 (2014). We reject this assignment of error.

*The Sentences Were Not Excessive.*

Dehning claims that the district court erred in imposing excessive sentences and failing to sentence him to probation. We find no merit to this assignment of error.

[4,5] We have stated that when imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record

of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Artis, ante* p. 172, ___ N.W.2d ___ (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Dehning claims that his prior criminal history is minimal and that probation would be a more appropriate sentence, because it would permit Dehning to regain employment and pay restitution to Cora Bell. He was sentenced to 60 to 60 months in prison for count I, exploitation of a vulnerable adult, and 5 to 10 years in prison for count II, theft by unlawful taking. Dehning does not assert that the sentences exceed the statutory limitations. We determine that the court did not abuse its discretion in sentencing Dehning as it did.

We have reviewed the explanations given by the sentencing court and find them to be consistent with controlling statutes and not an abuse of discretion. In denying probation, the court stated at the sentencing hearing that

a lesser sentence than imprisonment would depreciate from the seriousness of your offense or promote a disrespect for the law. . . . [T]here is a need for . . . correctional service or an institutionalization . . . and the . . . court finds that there is a substantial risk that you would engage in additional criminal conduct if you were placed on a period of probation.

With respect to Dehning's demeanor and the nature of the offenses, the court stated that

I was present for the entirety of your trial . . . . I listened to the evidence, I listened to your testimony at the time of the trial and the jury reached a verdict that they reached. The issue among others for me in this particular case is what I think is the callousness with which you spent the

resources that your mother and your father had worked hard their entire lives to generate . . . I found your testimony at the time of the trial to be completely incredible which means that I didn't believe it.

The record includes a presentence investigation report and an update thereto. These show that Dehning's prior criminal history includes the following: a conviction of terroristic threats in 1980 with 3 years' probation; a conviction for disturbing the peace in 1986; a conviction for cruelly mistreating an animal in 2004; a speeding ticket in 2004; and convictions in Keith County in 2014 for second degree assault, third degree domestic assault, tampering with a witness, and violation of a protection order, for which Dehning was sentenced to prison.

Given the facts and the court's proper considerations, the court did not abuse its discretion when it imposed the sentences recited above. We find no merit to this assignment of error.

## CONCLUSION

Dehning was convicted of exploitation of a vulnerable adult and theft by unlawful taking. The evidence was sufficient, and we affirm these convictions. The court's sentences were not an abuse of discretion. We affirm the convictions and sentences.

AFFIRMED.